STATE OF CONNECTICUT *v.* ADRIAN GENOTTI
(13774)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued October 2, 1991--decision released January 14, 1992

*Robert M. Casale,* for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Kevin P. McMahon,* assistant state's attorney, for the appellee (state).

BERDON, J. The principal issue in this appeal is whether the trial court abused its discretion by excluding the testimony of the defendant's expert witness as a sanction for defense counsel's alleged violations of Practice Book § 769.[1] The defendant, Adrian Genotti, was convicted of arson in the first degree, in violation of General Statutes § 53a-111,[2] and sentenced to a term of twenty years imprisonment, execution suspended after seven years, and five years probation. The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b) (3).[3] We reverse his conviction and remand for a new trial.

The state presented the following evidence to the jury. The arson charge stemmed from several small fires at the defendant's home in Newington on Novem-

[1] Practice Book § 769 provides: "Upon written motion of a prosecuting authority made within ten days after the entry of a plea, the defendant shall, within the time set by the judicial authority, disclose in writing the existence of, and allow the prosecuting authority to inspect, photograph, copy, or have reasonable tests made upon, any book, paper, document, photograph, or tangible object which is adequately identified by the prosecuting authority and within the defendant's possession or control and:

"(1) Which the defendant intends to offer in evidence, except to the extent that it contains any communication of the defendant; or

"(2) Which is a report or statement as to a physical or mental examination or scientific test or experiment made in connection with the particular case prepared by, and relating to the anticipated testimony of, a person whom the defendant intends to call as a witness."

[2] General Statutes § 53a-111 provides in pertinent part: "(a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building . . . he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury."

[3] General Statutes § 51-199 (b) (3) provides in pertinent part: "The following matters shall be taken directly to the supreme court . . . an appeal in any criminal action involving a conviction for a . . . class A felony . . . ."

ber 20, 1987. Fire Marshal Richard Walsh testified that, on the basis of his investigation, he had concluded that there were five separate fires, each with a separate point of origin, and that the fires had been deliberately set. Captain Thomas Gill of the Newington fire department testified that there were no means of extension between any of the fires that he had seen. Deputy Fire Marshal Robert K. Roy testified that he had noted no "extension" factors between the fires and he labeled the fires "very suspicious." Sergeant Richard A. Klett of the Newington police department testified that it had not been a windy day, and that he had not seen any connection between the fires. The state also presented evidence to show that because the defendant was in debt, he had a motive to start the fires in order to collect the insurance proceeds on his house.

The defendant offered the testimony of his expert witness, Fred S. O'Donnell, an arson investigator, who had visited the scene and was prepared to testify about his opinion as to the causation of the fires. O'Donnell also intended to testify about the burn patterns of the fires and to rebut the conclusions of the state's expert witnesses that there were no "communication points," or means of connection, between the fires.

The state argued that O'Donnell should not be allowed to testify because the defendant had failed to comply with its oral discovery motion made pursuant to § 769. After hearing arguments, the trial court found that defense counsel was attempting to circumvent the rules of discovery and concluded that, as a sanction for violating § 769, O'Donnell would not be allowed to testify before the jury. The court also prohibited the defendant from introducing into evidence sections of the defendant's wooden deck, to which O'Donnell had intended to refer during his testimony, any photographs taken by the defendant, and a videotape made by O'Donnell while at the defendant's home.

The defendant claims on appeal that he is entitled to a new trial because: (1) the trial court improperly excluded O'Donnell's expert testimony; and (2) the trial court improperly denied his motion to suppress certain laboratory test results because of the state's failure to preserve the test samples. We conclude that the trial court should not have excluded O'Donnell's testimony and that the trial court properly denied the defendant's motion to suppress the laboratory test results. Accordingly, we reverse the judgment of the trial court and remand for a new trial.

I

The following facts are relevant to the first claim raised. At a pretrial hearing, the state told the court that it had not received any written reports from the defendant's expert witnesses. Defense counsel told the court that he had received no written reports from O'Donnell, but had received a videotape.

Approximately one week later and prior to trial, the state again informed the court that despite its request, it still had not received any reports or notes from the defendant's expert witnesses. Defense counsel replied that there were no written reports, only a letter from a prospective expert witness, Michael Higgins, which the state had already received. Defense counsel again stated that he was in possession of a videotape from O'Donnell. In response to the state's request to view the videotape, counsel replied that he would bring the videotape to court the following day, which he, in fact, failed to do.

At trial, after concluding its case-in-chief on Friday, July 7, 1989, the state renewed its oral discovery request, again telling the court that it had not received "a written report, a statement, or anything" from the defendant's expert witnesses. Defense counsel reiterated that he had a videotape from O'Donnell, but that

portions of the tape had audio. He claimed that the videotape was a work product, and thus, not properly discoverable. The court told defense counsel that he could either voluntarily disclose the videotape or the court would conduct an in camera review of it. The court indicated that if the videotape contained O'Donnell's conclusions, it would consider the videotape a "report" for the purpose of discovery under § 769. On Monday, July 10, 1989, defense counsel voluntarily gave the state the videotape to review. He told the court that he did not intend to introduce the videotape into evidence. The court stated that because defense counsel had informed the court that the videotape did not contain any explanations or conclusions, it would "probably not constitute . . . an expert's report . . . ."

On Tuesday, July 11, 1989, the defendant called O'Donnell to testify. The state immediately requested a voir dire of O'Donnell. In the presence of the jury, O'Donnell said that he had taken photographs at the defendant's house. He stated that although he normally writes a report after conducting a scene investigation, in this case he had not done so because it was his first criminal investigation and no one had asked him to write a report.

The state informed the court that it had a motion to argue, and the jury was excused. The state argued that O'Donnell's photographs, field notes and the videotape were covered under its oral discovery motion and, thus, should have been disclosed. O'Donnell also testified, during the voir dire outside the presence of the jury, that he had never sent his field notes to defense counsel. O'Donnell testified that two or three weeks previously, on his own initiative and without defense counsel's knowledge, he had removed wood from the defendant's deck so that he could use it to explain his testimony about the burn patterns of the fires. O'Donnell told the

court that he had not conducted any scientific test or experiment on the wood. Defense counsel stated that he had become aware of O'Donnell's actions three days earlier, on Saturday, July 8, 1989, and that he had seen the wood for the first time that morning in court. He also stated that he had not decided to introduce the wood into evidence until that morning.

The state made a motion to exclude all testimony, photographs, tangible objects and the videotape from evidence because they had not been disclosed pursuant to its motion under § 769.[4] Defense counsel objected on the ground that § 769 (2) does not require a written report unless a scientific test or experiment has been conducted and that in the present case, no such test or experiment had been performed by O'Donnell. Defense counsel said that O'Donnell was going to testify about his visual observations at the scene and "render an opinion . . . as to the causation or as to the communication points on a fire." He informed the court that scientific tests or experiments were not necessary for O'Donnell to testify on these matters.[5] He also stated that (1) he had not seen O'Donnell's field notes, (2) he had not intended to introduce the photographs into evidence, (3) he had learned of O'Donnell's inten-

---

[4] Although Practice Book § 769 requires the state to file a "written motion," the defendant did not object to the form of the state's motion when it was made. Thus, the defendant has waived his right to argue that he is exempt from any sanctions for violating § 769 because the state's motion was oral and not written, as required by § 769.

[5] Defense counsel stated: "[O'Donnell] would qualify, I submit, based on his work background and his training as an arson investigator. I submit that he, if he is qualified, if he is qualified under the test, then he would be allowed to testify as to his visual observations based on his experience as an arson investigator and be able to render an opinion that would be above the ken of the average juror as to the causation of a fire or as to communication points on a fire. And there would be no scientific test or experiment required for a trained eye to testify on those matters. And, in fact, he conducted no test or experiment. He simply looked at the scene and came to some conclusions based on what he saw."

tion to use the wood only three days previously and had seen the wood for the first time that morning in court, and (4) he had already given the state the videotape O'Donnell had made and he had not intended to introduce the videotape into evidence. Defense counsel conceded that although he had told O'Donnell that a report was not necessary, that was a year earlier when he had not known whether O'Donnell would testify in the case.

The court concluded that under § 769, a "test" included "visual tests," and a written report was required. Thus, the court held that, due to defense counsel's failure to disclose the conclusions of O'Donnell's test in a written report, and because he violated the discovery rules by not disclosing the tangible evidence, O'Donnell could not testify as an expert witness. The court found that defense counsel's actions were "a way to circumvent the Practice Book rules to disclose information . . . from experts" and, thus, required a sanction. The court also ruled that the defendant would not be allowed to introduce into evidence the wood, the photographs and the videotape.[6] The court recalled the jury and instructed it that it would not "have testimony from [O'Donnell] beyond what [it] heard this morning."

The defendant claims on appeal that the trial court's actions violated his constitutional right to present a defense.[7] The sixth amendment right to compulsory

---

[6] The court stated: "The ruling is that you're not going to be able to present this expert witness because you have refused through various means to comply with the Practice Book rules to make things available. Telling the witness no report is necessary. Having photographs and not disclosing them. Having the videotape and not disclosing it. Knowing since last Saturday that there's a chunk of deck cut out and being brought into court to be offered into evidence, already paraded in front of the jury, now they're not going to see it. And not disclosing that yesterday morning when you came in. You knew about it Saturday. . . . I don't like the way it's going. I'm just not going to allow the evidence."

[7] The right to present a defense is embodied in the sixth amendment right to compulsory process and is applied to state prosecutions through the due

process[8] includes the "right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies." *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). This right, however, is not unlimited. *Taylor* v. *Illinois,* 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988); *State* v. *McKnight,* 191 Conn. 564, 581, 469 A.2d 397 (1983).[9] We need not reach the defendant's constitutional claim because we conclude that the trial court's ruling misconstrued the requirements of § 769. "We thus follow the recognized policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional questions." (Internal quotation marks omitted.) *State* v. *Rinaldi,* 220 Conn. 345, 353, 599 A.2d 1 (1991), quoting *State* v. *Gold,* 180 Conn. 619, 639, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980).

process clause of the fourteenth amendment to the United States constitution. *Washington* v. *Texas,* 388 U.S. 14, 18, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *McKnight,* 191 Conn. 564, 581, 469 A.2d 397 (1983).

[8] The sixth amendment provides in part that "in all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor."

[9] In *Taylor* v. *Illinois,* 484 U.S. 400, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988), the United States Supreme Court affirmed the trial court's exclusion of an alibi witness as a sanction for defense counsel's violation of the local rules of discovery. The court held that "[t]he principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case. . . . The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification, and presentation of evidence." Id., 410–11.

## A

We can summarily dispose of the trial court's ruling insofar as it assigned weight to the nondisclosure of the defendant's photographs. The plain language of § 769 (1) requires that a defendant disclose the existence of tangible evidence, including photographs, within his possession or control, if he intends to offer them into evidence. In the present case, defense counsel clearly stated that he had not intended to introduce the photographs into evidence.[10] Thus, because the defendant was not going to introduce the photographs into evidence, there was no violation of § 769. The court should not have considered the defendant's failure to disclose the photographs when it ordered the sanction of excluding O'Donnell's testimony.

## B

We next turn to the videotape O'Donnell had made at the scene of the fire. First, while it is true that defense counsel offered to give the state the videotape and then failed to do so for several weeks, defense counsel turned the videotape over to the state after prompting by the trial court. The court appeared satisfied with defense counsel's compliance and informed the state that if the videotape revealed something relevant to its case, the state would be allowed to present additional testimony in its rebuttal. Second, the court properly concluded that the videotape was not an expert's report pursuant to § 769 (2). Thus, it was only discoverable by the state if it fell within the ambit of § 769 (1),

---

[10] Defense counsel informed the court that, although he had photographs, "they don't show anything at all. I wasn't even going to submit those pictures. Frankly, I've got a thick file and I forgot they were in there. They're just pictures of the house, they don't show anything but snow on the ground. I wasn't going to submit those. . . . They show nothing more than what [the state] has on [its] pictures."

requiring the defendant to disclose tangible evidence if he had intended to introduce it into evidence. Because defense counsel asserted that he had not intended to introduce the videotape into evidence, the tardy disclosure of the videotape should not have played a role in the court's determination to exclude O'Donnell's testimony.

## C

We now turn to the crux of the defendant's appeal—the trial court's exclusion of O'Donnell's testimony. The defendant had intended to have O'Donnell offer his opinion as to the causation of the fires, their communication points and the burn patterns, all of which had been based upon his expertise and observations at the scene. O'Donnell was the only defense expert witness capable of rebutting the opinion of the state's experts concerning the causation of the fires, and thus, he was vital to the defense. The gravamen of the trial court's ruling was that O'Donnell would not be allowed to testify because he had not prepared a written report of his visual observations and conclusions.

As a threshold matter, we note that a witness does not have to conduct any test or experiment in order to be qualified to testify as an expert. "The admissibility of expert testimony depends on whether the witness offered as an expert possesses any peculiar knowledge or experience, not common to the world, which renders [his] opinions . . . any aid to the court or the jury in determining the questions at issue. *State* v. *Girolamo,* 197 Conn. 201, 214, 496 A.2d 948 (1985); *State* v. *Esposito,* 192 Conn. 166, 175, 471 A.2d 949 (1984); C. Tait & J. LaPlante, Connecticut Evidence (1976) § 7.16, p. 96. The knowledge may be drawn from reading alone, from experience alone, or from both. *State* v. *Esposito,* supra." (Internal quotation marks omitted.) *State* v. *Hasan,* 205 Conn. 485, 488, 534 A.2d

877 (1987). "Expert testimony is admissible if the witness possesses a special skill or knowledge directly applicable to a matter in issue . . . and the testimony would be helpful . . . in teaching the jury to view items of physical evidence by focusing their attention on certain salient features." Id.

We have not previously had the occasion to construe § 769 as it pertains to reports or statements from a defense expert witness. First, we must determine whether § 769 requires defense counsel to disclose to the state the unrecorded observations and conclusions of an expert witness; second, whether a defense expert witness is required to prepare a report or statement at all; and third, whether an expert witness' visual observations constitute a "test" within the meaning of § 769 (2).

" 'The rules of statutory construction apply with equal force to Practice Book rules.' " *State* v. *James,* 197 Conn. 358, 363, 497 A.2d 402 (1985), citing *State* v. *Cook,* 183 Conn. 520, 521, 441 A.2d 41 (1981). A basic tenet of statutory construction is that when " 'a statute [or rule of practice] is clear and unambiguous, there is no room for construction.' " *Nichols* v. *Warren,* 209 Conn. 191, 196, 550 A.2d 309 (1988). When we have occasion to construe rules of criminal procedure, they "are to be strictly construed to protect the fundamental constitutional right to liberty." *State* v. *Cook,* supra, 522.

In construing § 769, we first note that it has two components: the defendant must (1) "disclose in writing the existence of, and allow the prosecuting authority to inspect, photograph, copy, or have reasonable tests made upon, any book, paper, document, photograph, or tangible object," (2) that he intends to introduce into evidence, or that is a report or statement as to a physical or mental examination or a scientific test

or experiment. The plain language of the first component of the rule calls for the disclosure only of tangible objects, and cannot pertain to oral information. The Ninth Circuit Court of Appeals in *United States* v. *Peters,* 937 F.2d 1422, 1425 (9th Cir. 1991), held that the plain language of the cognate federal rule of discovery[11] does not require the disclosure of an expert's opinion that has not been recorded in any manner. According to the federal rule, "the defendant . . . shall permit the government to inspect and copy or photograph any results or reports of . . . scientific tests or experiments . . . ." Fed. R. Crim. P. 16 (b) (1) (B). The court in *Peters* found that "[w]hile the language 'results or reports' . . . arguably could apply to an expert's opinion that has not been recorded in some tangible medium, other language . . . clearly demonstrates that the [rule refers] only to information recorded in some tangible form. Specifically, [the rule is] phrased in terms of inspecting and copying or photographing material covered by the rule; such language clearly cannot pertain to oral information." *United States* v. *Peters,* supra, 1425.

This conclusion is further reinforced by the language in § 769 that "the defendant shall . . . disclose in writing the existence of, *and* allow the prosecuting authority to inspect, photograph, [or] copy . . . ." (Emphasis added.) We agree with the court in *Peters* that "[b]y using the conjunctive 'and,' the language indicates that

---

[11] Rule 16 (b) (1) (B) of the Federal Rules of Criminal Procedure provides in pertinent part: "[T]he defendant . . . shall permit the government to inspect and copy or photograph any results or reports of physical and mental examinations and scientific tests or experiments made in connection with the particular case . . . within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the result or reports relate to that witness' testimony."

everything of which the government should be informed is capable of inspection and copying, or photographing, and is therefore a physical item." *United States* v. *Peters,* supra, 1426. Accordingly, in this case, the defendant was not obligated to disclose to the state the expert witness' unrecorded observations and conclusions.

Second, we conclude that the plain language of § 769 did not require the defendant's expert witness to prepare a report or statement. The rule calls for defense counsel to "disclose in writing the *existence* of . . . a report or statement as to a physical or mental examination or scientific test or experiment . . . ." (Emphasis added.) The rule clearly requires defense counsel to disclose to the state a report or statement that has been prepared concerning a physical or mental examination or scientific test or experiment performed by the expert. It does not, however, require defense counsel to have his or her expert witness *prepare* a written report when one is unnecessary. If the framers of the rule had intended to have a defense expert witness prepare a report or record his or her opinions and conclusions, they would have explicitly so stated. Compare Practice Book § 763 (Defense counsel "shall file . . . a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi"). "We will not torture the words or sentence structure of a statute [or rule] to import an ambiguity where the ordinary meaning of the language leaves no room for it." *Board of Education* v. *State Employees Retirement Commission,* 210 Conn. 531, 543, 556 A.2d 572 (1989).

Third, we consider whether the trial court properly determined that O'Donnell's visual observation or

inspection of the scene constituted a "test" within the meaning of § 769 (2). We do not agree with the trial court, and we conclude that a scientific test or experiment, within the plain meaning of § 769, requires "more than the mere inspection of [tangible objects]." *United States* v. *Peters,* supra, 1426. In the present case, O'Donnell conducted a visual inspection of the scene in preparation for his anticipated testimony. That, in itself, did not constitute a scientific test or experiment.

Accordingly, we conclude that the trial court misconstrued the requirements of § 769 and even if a report pertaining to O'Donnell's visual inspection had been prepared, there would have been no duty to disclose it to the state pursuant to § 769.

### D

Lastly, the trial court ruled that the defendant would not be allowed to introduce into evidence the wood from the defendant's deck, which O'Donnell intended to use during his testimony. O'Donnell told the court during his voir dire that, in his opinion, "it's quite clear to me that an adequate analysis of the burn patterns was not done in this case." O'Donnell further testified that "I think once you have a chance to look at [the wood], hopefully a light will go on and the circumstances of this fire will become quite clear to everybody." Without O'Donnell's testimony, the defendant had no use for the wood. Thus, the real harm to the defendant arose from the court's exclusion of O'Donnell's testimony.

Technically, however, if the wood were to be introduced, it would have been discoverable because it was (1) a tangible object, and (2) the defendant intended to offer it into evidence. Practice Book § 769 (1). When considering whether to employ the sanction of exclusion, "[t]he trial court must weigh the need for exclu-

sion against the defendant's right to present a defense. . . . The decision [to exclude] is within the sound discretion of the trial court"; (citations omitted) *State* v. *Boucino,* 199 Conn. 207, 214, 506 A.2d 125 (1986); but, of course, it is not an absolute discretion. In making its determination whether to exclude the piece of wood, the court should have taken into consideration all the facts and circumstances of the case. Id. The court should have considered when the defendant or his counsel discovered the existence of the wood, the prejudice, if any, to the state in allowing the defendant to introduce the wood into evidence, whether a reasonable continuance for the state would have cured any prejudice, and the prejudice, if any, to the defendant in excluding the wood from evidence, and whether the failure to disclose the wood was "willful and motivated by a desire to obtain a tactical advantage." *Taylor* v. *Illinois,* supra, 415. Because we now remand the case for a new trial, it is not necessary to determine whether the trial court abused its discretion by excluding the wood in this case.

## II

The defendant's second claim of error, that his due process rights under both the federal and state constitutions had been violated because the state failed to preserve certain tangible evidence, is without merit. The United States Supreme Court has held that "unless a criminal defendant can show bad faith . . . failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona* v. *Youngblood,* 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). The defendant has not offered any evidence of bad faith on the part of the state. Thus, his claim of a violation of his federal due process rights is without merit. Moreover, the defendant's brief is void of a separate state constitutional analysis alleging a violation of his state due process rights. We have repeat-

edly alerted counsel that we will refuse to consider state constitutional claims in the absence of an independent analysis of the state constitutional provision at issue. *State* v. *Perez,* 218 Conn. 714, 723, 591 A.2d 119 (1991).

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.