[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT FOSTER PARENTS MOTION FORSUMMARY JUDGMENT
In this case a child was committed to the custody, care and guardianship of the Department of Children and Families pursuant to § 46b-129 of the General Statutes. Under that statute the Commissioner of the Department of Children and Families is the sole guardianship of the child. On October 24, 1994 this child allegedly struck another child and that child's parents sued the youth who allegedly committed the assault and the foster parents of that youth. On October 24, 1994 the Lindquists were in fact foster parents licensed and regulated by the state. The foster parents have been sued pursuant to § 52-572 of the General Statutes which states that "[t]he parent or parents or guardian, other than a temporary guardian appointed pursuant to § 45a-622, for any unemancipated minor or minors shall be liable for any injuries caused by the willful and malicious conduct of the minor.
The State represents the foster parents and has filed a motion for summary judgment claiming that § 52-572 limits potentially liable individuals to parents and guardians. Here the State, by virtue of the Juvenile Court commitment, is the sole CT Page 2343 guardian of the child as set forth in § 46b-129 of the General Statutes. That statute at subsection (d) says that upon an adjudication of neglect "[t]he commissioner shall be the guardian of such child." The same subsection says the Commissioner of the Department of Children and Families may place the child in a suitable foster home.
The state argues that the language of a statute must be given its plain and ordinary meaning. When a statute is clear and unambiguous there is no room for construction. Caldor v.Heffernan, 183 Conn. 566, 570 (1981); State v. Genotti,220 Conn. 796, 807 (1994). In Nye v. Marcus, 198 Conn. 138, 143 (1985), the court did say: "Foster families do not have the same rights as biological families or adoptive families." Hunte v. Blumenthal,238 Conn. 149 (1986) is referred to which states that it is the Commissioner of the department, not the foster parent, who is designated as the guardian of children placed in foster care." Id. p. 155.
However, Hunte was merely defining the relationship of the state to foster parents in order to determine whether foster parents were entitled, pursuant to §§ 4-165 and 5-141 (d), to defense and indemnification as state employees. The court merely held that since the state had the right to control the actions of foster parents, they were employees of the state. State statutes and regulations were examined which indicated to the court that the state did have a right to completely control the actions of foster parents in caring for children committed to their care. Thus, foster parents were not "independent contractors."
The court specifically said its decision fit the narrow facts of the case before it and said at footnote 17, page 167 that the court "expressed no view on the state's potential liability for the conduct of foster parents leading to injuries to parties other than foster children." Certainly, the court expressed no view on the general and universal meaning to be given the word "guardian" as it is used throughout the state statutory scheme.
Black's Law Dictionary (5th ed.) defines "guardian" as follows:
 "A person lawfully invested with the power, and charged with the duty, of taking care of the person and managing the property and rights of another person who, for defect of age, understanding, or CT Page 2344 self-control, is considered incapable of administering his (sic) own affairs. One who legally has responsibility for the care and management of the person, estate, or both of a child during its minority."
There is nothing to indicate that considering the ameliorative purposes of § 52-572 that the legislature had any intention of giving a narrow reading to the word "guardian." When the legislature wished to shield a class of people from the operation of the statute it knew now to do so. In § 52-572
itself, the statute says it does not apply to a temporary guardian appointed pursuant to § 45a-622. That statute deals with the "Appointment of Temporary Guardian" by probate court.
Hunte may have held that the State has the right to control foster parents. But it said nothing about the right and duties of foster parents to control the activities of children entrusted to their care. The whole point of § 52-572 is to place an obligation on parents and guardians to control minors entrusted to their care so they will not harm other people. Watson v.Gradzik, 34 Conn. Sup. 7, 9 (1977); Lutterman v. Martin,20 Conn. Sup. 371, 373 (1957); Groton v. Medbery, 6 Conn. Cir. 671, 673 (1972). The Watson case says: "Because parents do have the authority to compel obedience of their children, it would not seem unreasonable to hold them responsible for exercising that authority." Id. p. 9.
Can it seriously be said that foster parents do not have the responsibility to control the behavior of the children entrusted to their care? Shouldn't the State wish them to exercise a control similar to that of parents? When a foster parent who is claimed to be a "guardian" and not a "parent" is subject to suit under § 52-572 a factual issue may be presented concerning how much authority is in fact given to foster parents to control foster children, what is their obligation and duty to do so under state statutes and regulations, whether the control so given is sufficient so as to fairly impose liability on them given the purposes of § 52-572. But it would not be appropriate as a matter of law to give a purely linguistic analysis to this statute, ignore its purpose and bar its operation based on how an operative word — "guardian" — is used in a completely unrelated statute (§ 46b-129) with entirely different purposes.
The motion for summary judgment is denied. CT Page 2345
CORRADINO, J.