# RICHARD W. MICHALSKI ET AL. *v.* ROBERT HINZ
## (AC 27040)
## (AC 27041)

Gruendel, Harper and Pellegrino, Js.

Argued November 27, 2006—officially released April 10, 2007

*Frederick A. Lovejoy*, for the appellant in AC 27040, appellee in AC 27041 (defendant).

*Gary J. Strickland*, for the appellees in AC 27040, appellants in AC 27041 (plaintiffs).

*Opinion*

GRUENDEL, J. In the late evening of July 9, 2001, two vessels collided on Candlewood Lake in New Fairfield and a civil action followed. All parties now appeal

from the judgment of the trial court. In AC 27040, the defendant, Robert Hinz, claims that the court improperly (1) found him negligent due to his failure to pass port to port in violation of General Statutes § 15-131, (2) found him negligent due to his failure to sound his horn, (3) applied certain federal inland navigation rules, (4) declined to apply the doctrine of error in extremis and (5) denied his motion for a judgment of dismissal. In AC 27041, the plaintiffs, Richard W. Michalski and Maija Andross, contend that the court failed to comply with General Statutes § 52-257 in awarding costs. We affirm in part and reverse in part the judgment of the trial court.

The underlying facts are largely undisputed. On the evening of July 9, 2001, the plaintiffs fished at various locations on Candlewood Lake aboard a nineteen foot motorboat. That same evening, the defendant celebrated his fiftieth birthday with family and friends, culminating with a jaunt aboard his twenty-four foot sailboat. As the defendant operated his vessel under motor due to calm skies, a terrible end to that evening approached.

At approximately 11:30 p.m., the sailboat proceeded in a northerly direction on the lake. At that time, the plaintiffs, who had been fishing at a location to the north of the sailing vessel, set off for another location. They headed in a southerly direction, traveling approximately twenty miles per hour. The two vessels were on a collision course.

Less than thirty seconds passed between the time that the defendant and his guests first glimpsed the motorboat and impact. When the defendant saw the motorboat, he took evasive maneuvers, first steering his vessel to starboard in an effort to pass the motorboat on his port side. Seconds later, the defendant abruptly changed course, turning the vessel to port in an attempt

to pass the motorboat on his starboard side, to no avail. The vessels collided head on.

In the wake of those events, litigation ensued. The plaintiffs brought an action sounding in negligence and recklessness against the defendant concerning the events of July 9, 2001, as set forth in an amended complaint filed April 8, 2005. In response, the defendant filed an answer and special defenses that alleged, inter alia, that the plaintiffs' negligence proximately caused the collision. Following a trial, the court found the defendant negligent in failing to pass port to port and in failing to sound his horn. The court further found the plaintiffs negligent in traveling at an unsafe speed and in failing to maintain a proper lookout. The court found no recklessness on the part of any party. It apportioned liability equally between the defendant and the plaintiffs. The court awarded Michalski a total of $12,850 in damages, reduced by 50 percent to $6425, against the defendant. The court awarded Andross a total of $83,382 in damages, reduced by 50 percent to $41,691, against the defendant. The court further ordered that "[e]ach party shall bear their own costs and expenses." The plaintiffs subsequently filed a motion to assess costs, which the court denied. The defendant thereafter filed a motion for review with this court, which we granted, ordering an articulation. In response, the court issued a "Supplemental Memorandum of Decision in Response to Order for Articulation." These consolidated appeals followed.

I

AC 27040

The defendant first claims that the court's finding that he failed to pass port to port in violation of § 15-131 improperly served as a basis for its finding of negligence on his part.[1] He contends that, because the plaintiffs' complaint neither pleaded that statute nor

---

[1] General Statutes § 15-131 (1) provides: "When vessels approach each other end on, or nearly so, each shall pass on the port side of the other,

contained such a factual allegation, the court's finding improperly figured into its negligence determination. We agree with the defendant.[2]

Because the interpretation of pleadings presents an issue of law, our review is plenary. *Maloney* v. *PCRE, LLC*, 68 Conn. App. 727, 746, 793 A.2d 1118 (2002). "It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [its] complaint." (Internal quotation marks omitted.) *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 496, 646 A.2d 1289 (1994). More than one century ago, our Supreme Court held that "[w]hen the facts upon which the court in any case founds its judgment are not averred in the pleadings, they cannot be made the basis for a recovery." *Whiting* v. *Koepke*, 71 Conn. 77, 79, 40 A. 1053 (1898). The vitality of that bedrock principle of Connecticut practice is unquestionable. See, e.g., *Lundberg* v. *Kovacs*, 172 Conn. 229, 233, 374 A.2d 201 (1977); *Malone* v. *Steinberg*, 138 Conn. 718, 721, 89 A.2d 213 (1952); *Monetary Funding Group, Inc.* v. *Pluchino*, 87 Conn. App. 401, 414, 867 A.2d 841 (2005); *Criscuolo* v. *Mauro Motors, Inc.*, 58 Conn. App. 537, 545, 754 A.2d 810 (2000); *O'Brien* v. *Coburn*, 39 Conn. App. 143, 149, 664 A.2d 312 (1995); *Francis* v. *Hollauer*, 1 Conn. App. 693, 695, 475 A.2d 326 (1984).

The plaintiffs' complaint alleged several grounds for its claims of negligence. It was silent as to the defendant's failure to pass port to port. In addition, although Practice Book § 10-3 (a) requires in relevant part that "[w]hen any claim made in a complaint . . . is

---

except that, if the courses of such vessels are so far to the starboard of each other as not to be considered approaching end on and altering course would create a hazard, each shall keep out of the way of the other and pass on the starboard side of the other."

[2] Our resolution of the defendant's claim makes it unnecessary to address his corollary contention that the court's finding that he failed to pass port to port was clearly erroneous.

grounded on a statute, the statute shall be specifically identified by its number," the plaintiffs' complaint did not identify § 15-131. Although our courts repeatedly have recognized that the rule embodied in Practice Book § 10-3 is directory and not mandatory; see, e.g., *Steele* v. *Stonington*, 225 Conn. 217, 221 n.7, 622 A.2d 551 (1993); *Fleet National Bank* v. *Lahm*, 86 Conn. App. 403, 405 n.3, 861 A.2d 545 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005); notice is the critical consideration in such instances. As this court has observed, "[a]s long as the defendant is sufficiently apprised of the nature of the action . . . the failure to comply with the directive of Practice Book § 10-3 (a) will not bar recovery." (Citation omitted; internal quotation marks omitted.) *Spears* v. *Garcia*, 66 Conn. App. 669, 676, 785 A.2d 1181 (2001), aff'd, 263 Conn. 22, 818 A.2d 37 (2003). In *Spears*, the plaintiffs failed to plead the protections of General Statutes § 52-557n in their complaint. *Spears* v. *Garcia*, supra, 676. Because the plaintiffs relied on that statute in their memorandum of law in opposition to the defendants' motion for summary judgment and in oral argument before the trial court, we concluded that the defendants were sufficiently apprised of the nature of the action. Id. By contrast, the plaintiffs in the present case never alleged a violation of § 15-131 at any stage of the proceedings. On that record, we cannot conclude that the defendant was sufficiently apprised that § 15-131 was at issue.

In the present case, the plaintiffs made no factual allegation concerning the defendant's failure to pass port to port in their negligence claims.[3] Because they

---

[3] The plaintiffs' complaint averred the following factual bases for its negligence counts: "a. [In that the defendant] was underway and operating his sailboat between sunset and sunrise without displaying the required navigation lights, in violation of [General Statutes § 15-129a] . . .

"b. [In that] he failed to maintain a proper lookout for other vessels by sight and hearing as well as by all other available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision in violation of [33 U.S.C. § 2005];

may rely only on what they have alleged, the plaintiffs may not recover for any negligence resulting from the defendant's failure to pass port to port.

The plaintiffs do not dispute that pleading deficiency.[4] Rather, they claim an immaterial variance.[5] "A variance is a departure of the proof from the facts as alleged. Not every variance, however, is a fatal one since immaterial variances are disregarded under our practice. Practice Book § [10-62] . . . . Only material variances, those which disclose a departure from the allegations in some matter essential to the charge or claim, warrant the reversal of a judgment. . . . A variance is material only

"c. [In that] he failed to proceed at a safe speed appropriate to the prevailing circumstances in violation of [33 U.S.C. § 2006];

"d. [In that] he was underway and operating his sailboat between sunset and sunrise without displaying the required navigation lights in violation of [33 U.S.C. § 2023 or 33 U.S.C. § 2025];

"e. [In that] he was underway and operating his sailboat between sunset and sunrise without displaying lights sufficient to be seen by other vessels;

"f. [In that] he failed to maintain a proper lookout for other vessels;

"g. [In that] he failed to proceed at a safe speed appropriate to the prevailing circumstances;

"h. [In that] he failed to give a sound and/or light signal within half a mile of sighting the [plaintiffs'] vessel to signal to [the plaintiffs] his intended maneuver in violation of [33 U.S.C. § 2034];

"i. [In that] he failed as a 'vessel in doubt' to give a sound and/or light signal in violation of [33 U.S.C. § 2034] and;

"j. [In that] he failed to give a sound and/or light signal when it appeared to the defendant that the vessel being operated by [Michalski] was on a collision course and it appeared that the vessel being operated by [Michalski] was not taking any action to alter his course."

[4] The plaintiffs' appellate brief acknowledges: "The amended complaint does not specifically allege the failure to pass port to port as a subspecification of negligence."

[5] The plaintiffs alternatively argue that the defendant waived any claim as to the alleged variance. We are mindful that "[i]n claiming a variance, it is essential to raise such a claim during trial." *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 235 n.35, 477 A.2d 988 (1984). It seems incongruous to us, however, that the defendant could have intentionally waived any objection to a factual allegation that the plaintiffs never presented to the trial court. As such, the defendant cannot be said to have waived his objection thereto. See *Buol Machine Co.* v. *Buckens*, 146 Conn. 639, 642, 153 A.2d 826 (1959).

if the defendant is prejudiced by it." (Citations omitted; internal quotation marks omitted.) *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, 233 Conn. 254, 275–76, 659 A.2d 148 (1995). To be material, a variance must relate to the cause of action alleged. *LaFaive* v. *DiLoreto*, 2 Conn. App. 58, 61, 476 A.2d 626, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984). "[A] variance which alters the basic nature of a complainant's cause of action cannot be condoned." (Internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 63, 717 A.2d 77 (1998). The critical inquiry is whether the opposing party was on notice of the variance. See *Tedesco* v. *Stamford*, 215 Conn. 450, 463, 576 A.2d 1273 (1990) (where defendant had sufficient notice of claims not specifically alleged, no material variance between pleadings and proof), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd, 222 Conn. 233, 610 A.2d 574 (1992); see also *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, supra, 230 Conn. 496 (pleadings must provide sufficient notice of facts claimed and issues to be tried and not surprise or prejudice opposing party).

The plaintiffs misunderstand the defendant's argument on appeal. The defendant is not alleging a variance between the plaintiffs' pleadings and their proof offered at trial. Rather, he alleges that the court, in rendering judgment, did so on a ground never claimed by the plaintiffs. We agree.

"A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief." (Internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 129, 788 A.2d 83 (2002). The pertinent question before us is whether, at any time prior to the court's judgment, the defendant was on

notice that his failure to pass port to port was claimed by the plaintiffs as a basis for their negligence count.

We already have noted that the plaintiffs' pleadings do not contain such an allegation. Moreover, a review of the trial transcripts reveals that at no time did the plaintiffs either claim a violation of § 15-131 or inform the court or the defendant that they were pursuing such an allegation. Unhindered by that deficiency, on June 7, 2005, the court nevertheless found, inter alia, that "the defendant was negligent in that he failed to pass [the] oncoming boat on the port to port side . . . ." The defendant thereafter filed a timely motion for review with this court, which sought the following articulation: "What were the factual justification(s) and legal basis for finding [the defendant] negligent/liable for failing to pass . . . Michalski's vessel port to port *when the plaintiffs never* [*pleaded*] *or asserted such a cause of action in either* [*their*] *original complaint or in the amended complaint* [*they*] *filed during the trial.*" (Emphasis added.) This court subsequently granted the defendant's motion for review and further granted the relief requested therein. Accordingly, we ordered the trial court to "articulate the basis for its finding that the defendant was negligent in that he failed to pass the oncoming boat on the port to port side . . . ."

In response, the court issued a "Supplemental Memorandum of Decision in Response to Order for Articulation," in which it stated: "General Statutes § 15-131 and the rules for operating vessels, including the Connecticut Boater's Guide require that boats shall pass port to port. . . . The testimony of the defendant was that he knew of the requirements of proper passage and that he failed to do so. It was further testified by the defendant that he started to pass port to port and then decided to change course to the left to pass on the starboard side. . . . [I]f the defendant had maintained his course and passed port to port, the accident could have been

avoided. His decision to change course and pass on the starboard side was [a] basis of the finding of the court that the defendant was negligent."

Although the court may well be correct that the defendant failed to comply with § 15-131 and that that failure contributed to the collision, the court's supplemental memorandum of decision never addressed the plaintiffs' failure to allege that statutory violation as a basis for their negligence action in the complaint or at trial. It is telling that although the plaintiffs filed an amended complaint during trial, it contained no allegation concerning the failure to pass port to port. Even more remarkable is the fact that, in their May 17, 2005 objection to the defendant's "motion for judgment of dismissal and/or directed verdict," the plaintiffs stated that "[t]he plaintiffs, in their case-in-chief, have presented evidence at trial to demonstrate that the defendant was negligent and/or reckless for the following violations . . . ."[6] That objection was silent as to § 15-131 or the

---

[6] The plaintiffs' May 17, 2005 objection to the defendant's "motion for judgment of dismissal and/or directed verdict" stated that "[t]he plaintiffs, in their case-in-chief, have presented evidence at trial to demonstrate that the defendant was negligent and/or reckless for the following statutory violations:

"(1) Failing to display the required navigation lights while underway between sunset and sunrise in violation of General Statutes § 15-129a; 33 U.S.C. § 2023; United States Coast Guard Navigation Rules International-Inland Rule 23;

"(2) Failing to maintain a proper lookout for other vessels by sight and hearing as well by all other available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision in violation of 33 U.S.C. § 2005; United States Coast Guard Navigation Rules International-Inland Rule 5;

"(3) Failing to give a sound signal within a half mile of sighting the [plaintiffs' vessel] to signal to [the plaintiffs] his intended maneuver in violation of 33 U.S.C. § 2034; United States Coast Guard Navigation Rules International-Inland Rule 34;

"(4) Failing as a 'vessel in doubt' to give a sound and/or light signal in violation of 33 U.S.C. § 2034; United States Coast Guard Navigation Rules International-Inland Rule 34;

"In addition, the [plaintiffs] have produced evidence at trial for violations of common law duties of:

failure to pass port to port. Furthermore, the plaintiffs' June 3, 2005 posttrial brief stated that "[t]he evidence produced at trial proves that the defendant was negligent and reckless in that he failed to have his navigation lights on when underway; he failed to keep a proper lookout; and he failed to give the appropriate sound signal (horn) when required." To now contend that they alleged a violation of § 15-131 in the face of those pleadings is, at best, disingenuous.

At their essence, both Practice Book § 10-3 (a) and our law on variances concern notice. See *Tedesco* v. *Stamford*, supra, 215 Conn. 463. As we recently observed, "[t]he concept of notice concerns notions of fundamental fairness, affording parties the opportunity to be apprised when their interests are implicated in a given matter." *Twenty-Four Merrill Street Condominium Assn., Inc.* v. *Murray*, 96 Conn. App. 616, 622, 902 A.2d 24 (2006). Our thorough review of the record convinces us that the defendant was never provided the requisite notice in the present case. The plaintiffs failed to allege a violation of § 15-131 in either their original complaint, their amended complaint, their May 17, 2005 objection to the defendant's motion for a judgment of dismissal or their June 3, 2005 posttrial brief. Moreover, they never referenced a violation of that statute at any time during trial. It therefore was improper for the court to find the defendant negligent for failing to comply with that statutory requirement.

## II

The defendant also contests the court's finding that he was negligent in failing to sound his horn. He maintains that he was not obligated to sound his horn under

---

"(5) Failing to display lights sufficient to be seen by other vessels while underway between sunset and sunrise;

"(6) Failing to maintain a proper lookout for other vessels;

"(7) Failing to give a sound signal when it appeared to the defendant that the vessel being operated by [Michalski] was on a collision course and it appeared that [Michalski] was not taking any action to alter his course."

Connecticut law. Our review of that question of law is plenary. See, e.g., *Smith* v. *Greenwich*, 278 Conn. 428, 453, 899 A.2d 563 (2006).

The statutory scheme set forth in General Statutes § 15-121 et seq. governs boating in our state. Section 15-121 (a) charges the commissioner of the department of environmental protection (commissioner) with responsibility for boating in Connecticut and vests in the commissioner "exclusive jurisdiction of all waters of the state . . . ." Section § 15-121 (b) (11) authorizes the commissioner to adopt regulations for the safe operation of vessels. In addition, General Statutes § 15-138 requires the commissioner to publish a boater's guide annually.[7] The 2001 Connecticut Boater's Guide was admitted as plaintiffs' exhibit two. Page eighty-seven of that publication states that "[a]ll vessels are required to exchange sound signals when their paths will lead them into any close quarters situation." It further provides that "[w]hen two vessels are approaching on reciprocal courses in a head on or nearly so situation, both vessels should exchange a one blast signal . . . ." At trial, the defendant's expert testified that the federal inland navigation rules; see 33 U.S.C. § 2001 et seq.; contain a similar requirement.

In its memorandum of decision, the court expressly predicated its decision on both Connecticut boating regulations and the federal inland navigation rules. Those regulations plainly indicate that the defendant was obligated to sound his horn amidst the events of

---

[7] General Statutes § 15-138, titled "Publication of laws, regulations and ordinances," provides in relevant part: "On or before the first day of April annually the commissioner shall publish in pamphlet form and distribute all general and special laws and all regulations and ordinances adopted or approved by him pertaining to or affecting boating and boating activities, or a digest or resume of such laws, regulations and ordinances, together with information respecting rules, forms and procedures prescribed by him for the administration of this part. No regulation or ordinance shall take effect until so published and distributed . . . ."

July 9, 2001. At trial, the defendant testified that, when on Candlewood Lake, "I don't use the horn when I pass other vessels port to port. . . . Even though the rules say so." He further testified that he failed to sound his horn on the evening of July 9, 2001. On that record, the court properly found that the defendant was negligent in failing to sound his horn.

As our Supreme Court has stated, "[t]he conclusion of negligence is necessarily one of fact . . . ." (Citations omitted; internal quotation marks omitted.) *Michaud* v. *Gurney*, 168 Conn. 431, 434, 362 A.2d 857 (1975); see also *Hunter* v. *Healey Car & Truck Leasing, Inc.*, 41 Conn. App. 347, 349, 675 A.2d 919 (negligence ordinarily question of fact), cert. granted on other grounds, 238 Conn. 901, 677 A.2d 1375 (1996) (appeal dismissed December 18, 1996); *DeMotses* v. *Leonard Schwartz Nissan, Inc.*, 22 Conn. App. 464, 467, 578 A.2d 144 (1990) (negligence "generally a question of fact, not law"). Accordingly, the court's finding of negligence will be upheld unless it is clearly erroneous. See *Spencer* v. *Star Steel Structures, Inc.*, 96 Conn. App. 142, 151, 900 A.2d 42, cert. denied, 280 Conn. 914, 908 A.2d 539 (2006). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence . . . we give great deference to its findings." (Internal quotation marks omitted.) *Reiner, Reiner & Bendett, P.C.* v. *Cadle Co.*, 278 Conn. 92, 107, 897 A.2d 58 (2006). The record demonstrates that the defendant failed to sound his horn on the evening of July 9, 2001, in violation of Connecticut boating regulations. In light of the foregoing, the court's finding of negligence on his part was not clearly erroneous.

## III

The defendant next contends that the court improperly applied the federal inland navigation rules; see 33 U.S.C. § 2001 et seq.; in the present case. That claim merits little discussion. At trial, it was the defendant who introduced those rules into evidence. The defendant further offered the expert testimony of Captain Joseph Ahlstrom of the State University of New York Maritime College. The court specifically asked Ahlstrom whether those rules applied on Candlewood Lake; he answered in the affirmative. On appeal, the defendant has provided this court with no authority to conclude otherwise. See, e.g., *State* v. *Hamlin*, 90 Conn. App. 445, 454 n.9, 878 A.2d 374 (substantive analytical discussion and citation of authorities prerequisites to adequate briefing), cert. denied, 276 Conn. 914, 888 A.2d 86 (2005).

Moreover, that claim is an academic one in light of the fact that the court also predicated its decision on Connecticut boating regulations. Even if the defendant had provided this court with authority for his proposition that the federal inland navigation rules do not apply on Candlewood Lake, he could not benefit from that argument in light of the court's finding that he violated a boating regulation of this state.

## IV

The defendant also alleges that the court improperly declined to apply the doctrine of error in extremis. That doctrine, articulated by the United States Supreme Court in *The Blue Jacket*, 144 U.S. 371, 12 S. Ct. 711, 36 L. Ed. 469 (1892), provides that "where one ship has, by wrong manoeuvres, placed another ship in a position of extreme danger, that other ship will not be held to blame if she has done something wrong, and has not been manoeuvred with perfect skill and presence of mind." (Internal quotation marks omitted.) Id., 392. The

defendant refers to the court's findings that the plaintiffs were negligent in traveling at an unsafe speed and in failing to maintain a proper lookout and posits that those actions bring his conduct within the purview of error in extremis. His claim is problematic for two reasons.

First, as the court noted in its supplemental memorandum of decision, the issue of error in extremis was "not raised at trial or raised in the trial briefs . . . ." The court therefore was not bound to afford it consideration. Practice Book § 5-2 provides: "Any party intending to raise any question of law which may be the subject of an appeal must either state the question distinctly to the judicial authority in a written trial brief under Section 5-1 or state the question distinctly to the judicial authority on the record before such party's closing argument and within sufficient time to give the opposing counsel an opportunity to discuss the question. If the party fails to do this, the judicial authority will be under no obligation to decide the question."

Second, even if we were to consider the defendant's claim, he still could not prevail. Although no Connecticut appellate court has discussed the doctrine of error in extremis, we find persuasive the recent decision of the United States Court of Appeals for the Seventh Circuit in *Chicago* v. *M/V Morgan*, 375 F.3d 563 (7th Cir. 2004). That court explained that "[t]he party relying on the in extremis doctrine must be completely free from fault prior to the emergency occurrence. . . . It does not excuse a vessel making a wrong maneuver in extremis where the imminence of the peril was occasioned by the fault or negligence of those in charge of the vessel, or might have been avoided by earlier precautions which it was bound to take. . . . Further, applicability of the doctrine does not prevent a finding of liability, it merely requires courts to judge a captain's reactions more leniently because of the crisis situation."

(Citations omitted; internal quotation marks omitted.) Id., 577. Here, the court found that the defendant was negligent in failing to sound his horn. The failure to sound a horn is an earlier precaution that the defendant was bound to take under Connecticut law. Had the defendant complied with that precautionary requirement, the collision might have been avoided. As such, the doctrine of error in extremis is inapplicable.

## V

The defendant's final claim is that the court improperly denied his motion for a judgment of dismissal. "In Connecticut, a directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 380, 260 A.2d 596 (1969). "Directed verdicts . . . are historically not favored . . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.) *Silano* v. *Cumberland Farms, Inc.*, 85 Conn. App. 450, 452–53, 857 A.2d 439 (2004).

The defendant argues that the plaintiffs could not establish a prima facie case of negligence without the aid of expert testimony. We disagree. Expert testimony is required only when a disputed matter is "manifestly beyond the ken of the average trier of fact, be it judge or jury." *State* v. *McClary*, 207 Conn. 233, 245, 541 A.2d 96 (1988). The issues before the court involved boating regulations and the defendant's compliance therewith. As discussed in part II, our boating regulations require

the sounding of a horn when two vessels are approaching in a head-on situation. Whether the defendant in fact complied with that precautionary requirement is a relatively straightforward inquiry that is not manifestly beyond the ken of the average trier of fact, as is the question of whether the defendant complied with § 15-131.

The defendant's claim suffers a further infirmity. On April 8, 2005, the plaintiffs rested their case and the defendant commenced his defense. The defendant on that day elicited the expert testimony of Captain Ahlstrom. On April 25, 2005, the defendant filed his motion for a judgment of dismissal based solely on the plaintiffs' failure to introduce expert testimony. At that stage of the proceedings, however, the court already had before it expert testimony regarding the central issues in dispute. The defendant cannot now complain of the court's reliance on that testimony. See *Sears, Roebuck & Co.* v. *Board of Tax Review*, 241 Conn. 749, 756, 699 A.2d 81 (1997). As our Supreme Court noted, "by introducing evidence, the defendant undertakes a risk that the testimony of defense witnesses will fill an evidentiary gap in the [plaintiff's] case." (Internal quotation marks omitted.) Id., 757. In light of the foregoing, the court properly denied the defendant's motion for a judgment of dismissal.

VI

AC 27041

In their separate appeal, the plaintiffs claim that the court failed to comply with § 52-257 in awarding costs. In rendering judgment, the court ordered that "[e]ach party shall bear their own costs and expenses." The plaintiffs subsequently filed a motion to assess costs,

which the court denied. From that judgment, the plaintiffs now appeal.[8]

Section 52-257 provides that the prevailing party shall receive certain sums in civil actions.[9] Such sums are mandatory rather than discretionary. As our Supreme Court stated in *Fengler* v. *Northwest Connecticut Homes, Inc.*, 215 Conn. 286, 291, 575 A.2d 696 (1990), "[a]n examination of General Statutes § 52-257, entitled '[f]ees of parties in civil actions,' reveals that most of

[8] The defendant did not file a brief in AC 27041. At oral argument, his counsel conceded that the plaintiffs were entitled to costs pursuant to § 52-257.

[9] General Statutes § 52-257 provides in relevant part: "(a) The fees of parties in civil actions in which the matter in demand is not less than fifteen thousand dollars *shall* be: For each complaint, exclusive of signing and bond, five dollars for the first page and, for each succeeding page, two dollars; for each judgment file, two dollars for the first page and, for each additional page, one dollar and fifty cents. The prevailing party in any such civil action *shall* receive, by way of indemnity, the following sums: (1) For all proceedings before trial, fifty dollars; (2) for the trial of an issue of law or fact, seventy-five dollars, but if more than one issue of fact is tried at one time, only one trial fee shall be allowed . . . .

"(b) Parties *shall* also receive: (1) For each witness attending court, the witness' legal fee and mileage; (2) for each deposition taken out of the state, forty dollars, and for each deposition within the state, thirty dollars . . . (5) for maps, plans, mechanical drawings and photographs, necessary or convenient in the trial of any action, a reasonable sum; (6) for copies of records used in evidence, bonds, recognizances and subpoenas, court and clerk's fees; (7) for the signing and service of process, the legal fees payable therefor, except that a fee shall not be allowed for the return of a subpoena to court; (8) the actual expense incurred in publishing orders of notice under direction of the court; (9) for each interpreter necessarily employed in the trial of any civil action, twenty dollars per diem; (10) for premiums upon all bonds or undertakings provided pursuant to statute, rule of court, order of court or stipulation of parties, including bonds in lieu of or in release or dissolution of attachment, the actual amount paid, not exceeding a reasonable amount; (11) documented investigative costs and expenses, not exceeding the sum of two hundred dollars; and (12) for the recording, videotaping, transcribing and presentation of the deposition of a practitioner of the healing arts, as defined in section 20-1, dentist, registered nurse, advanced practice registered nurse or licensed practical nurse, as defined in section 20-87a, or real estate appraiser that is used in lieu of live testimony in the civil action, the reasonable expenses incurred." (Emphasis added.)

the awards are automatic assessments, not involving the discretion of the court." The plaintiffs were the prevailing party in the present civil action, together receiving an award of damages of almost $50,000 against the defendant. That they did not prevail on all of their claims is of no moment. As we recently explained, "[a] party need not prevail on all issues to justify a full award of costs, and it has been held that if the prevailing party obtains judgment on even a fraction of the claims advanced, or is awarded only nominal damages, the party may nevertheless be regarded as the prevailing party and thus entitled to an award of costs." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 631, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005). The court wrongly denied the plaintiffs' motion to assess costs in the present case.

The judgment is reversed only as to the denial of the plaintiffs' motion for costs and the case is remanded for further proceedings regarding the award of costs. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.