# CHARLES J. BARANOWSKI, JR. *v.* SAFECO INSURANCE COMPANY OF AMERICA ET AL.
## (AC 30003)

Beach, Robinson and Schaller, Js.

Argued September 21, 2009—officially released January 26, 2010

*Eddi Z. Zyko,* for the appellant (plaintiff).

*Joseph T. Sweeney,* with whom, on the brief, was *Brian J. Gedicks,* for the appellee (defendant Sundel & Milford, Inc.).

*Opinion*

SCHALLER, J. The plaintiff, Charles J. Baranowski, Jr., appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendant Sundel & Milford, Inc.[1] On appeal, the plaintiff claims that the court improperly (1) declined to instruct the jury that expert testimony was not required to apply the law and (2) granted the defendant's motion to preclude the testimony of an expert witness. We affirm the judgment of the trial court.

---

[1] Safeco Insurance Company of America also was named as a defendant in the plaintiff's complaint, but the plaintiff withdrew his claims against it prior to trial and it is not a party to this appeal. Accordingly, we refer in this opinion to Sundel & Milford, Inc., as the defendant.

The following facts and procedural history are relevant to the disposition of the plaintiff's appeal. In March, 1998, the plaintiff met with Kathy Milford, an agent of the defendant, to procure personal automobile insurance. Milford explained to the plaintiff each type of coverage available and the limit amounts. Milford discussed with the plaintiff uninsured and underinsured motorist coverage, including underinsured motorist conversion coverage.[2] Underinsured motorist conversion coverage is a type of underinsured motorist coverage. See General Statutes § 38a-336a.[3] "This option,

[2] In the defendant's answer, it admitted that it had a duty to offer underinsured motorist conversion coverage and it had a "duty to explain the coverage which was being offered in order to enable [the plaintiff] to make a knowing choice to purchase or reject purchasing that offered coverage."

[3] General Statutes § 38a-336a entitled "Underinsured motorist conversion coverage," provides: "(a) Each insurer licensed to write automobile liability insurance in this state shall offer, for an additional premium, underinsured motorist conversion coverage with limits in accordance with section 38a-336. The purchase of such underinsured motorist conversion coverage shall be in lieu of underinsured motorist coverage pursuant to section 38a-336.

"(b) Such coverage shall provide for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles.

"(c) Each insurer shall be obligated to pay to the insured, up to the limits of the policy's underinsured motorist conversion coverage, after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements. If the insured purchases such underinsured motorist conversion coverage, then in no event shall the underinsured motorist coverage be reduced on account of any payment by or on behalf of the tortfeasor or by any third party.

"(d) The selection of coverage under this section shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by any named insured.

"(e) For purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of all payments received by or on behalf of the covered person from or on behalf of the tortfeasor are less than the fair, just and reasonable damages of the covered person.

"(f) The provisions of this section shall apply to all new and renewal policies issued on or after January 1, 1994."

This statute includes amendments pursuant to Public Acts 1994, No. 94-243, §§ 5 and 6.

which is available for an additional premium to consumers who wish to purchase it in lieu of standard underinsured motorist coverage under § 38a-336, provides enhanced protection to victims of underinsured motorists . . . ." *Florestal* v. *Government Employees Ins. Co.*, 236 Conn. 299, 307, 673 A.2d 474 (1996) "[Unlike] coverage under § 38a-336, it is activated when the sum of all payments received by or on behalf of the covered person from or on behalf of the tortfeasor are less than the fair, just and reasonable damages of the covered person." (Internal quotation marks omitted.) Id. In contrast to traditional underinsured motorist coverage, underinsured motorist conversion coverage is not reduced by the amount of any payment received by or on behalf of the tortfeasor or a third party. Compare General Statutes §§ 38a-336 (b) to 38a-336a (c). The plaintiff elected the standard underinsured motorist coverage with bodily injury liability of $100,000 for each person and $300,000 for each accident. Milford then prepared an insurance application form with the coverages the plaintiff elected. The plaintiff and Milford signed the insurance application, which then was submitted to Safeco Insurance Company of America (Safeco Insurance). Safeco Insurance issued an automobile insurance policy pursuant to the application. The plaintiff's insurance policy automatically renewed every six months. Milford testified that she did not discuss underinsured motorist conversion coverage with the plaintiff after the initial meeting.

On February 3, 2001, the plaintiff was involved in an automobile accident. In his complaint, the plaintiff alleged that he sustained injuries and other damages exceeding $500,000. The driver of the vehicle who caused the accident (tortfeasor) was insured by Travelers Property Casualty (Travelers). The plaintiff recovered $50,000 from the tortfeasor's insurance carrier for the injuries he sustained. The plaintiff then submitted

a claim to Safeco Insurance to collect on the underinsured motorist coverage provided by his policy. The plaintiff did not have underinsured motorist conversion coverage. Safeco Insurance ultimately paid the plaintiff $35,000 on the underinsured motorist claim. Thereafter, the plaintiff brought an action against the defendant, claiming negligence and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The action was based on allegations that the defendant failed to offer underinsured motorist conversion coverage to the plaintiff or to ensure that he knowingly rejected it after being fully and fairly informed.

I

The plaintiff first claims that the court improperly declined to instruct the jury that expert testimony was not required for the jury to determine whether the defendant complied with § 38a-336a in offering the plaintiff underinsured motorist conversion coverage. Specifically, the plaintiff argues that the court improperly declined to adopt his proposed instruction that "[u]nderinsured motorist conversion coverage is a relatively straightforward inquiry that is not manifestly beyond the ken of the average trier of fact."[4] We disagree.

---

[4] In the plaintiff's statement of issues, he states that "the court erred in failing to use [the] plaintiff's written supplemental request to charge (Docket Entry Number [146.00])." The only issue briefed from the plaintiff's supplemental request to charge (docket entry number 146.00) is whether the court erred in declining to instruct the jury that an expert witness is not required to decide the issue. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *State* v. *Holloway*, 117 Conn. App. 798, 819 n.14, 982 A.2d 231 (2009). We therefore decline to review any other portion of the plaintiff's written supplemental request to charge (docket entry number 147.00) because it was briefed inadequately.

"We first set forth the well established standard of review for a challenge to the propriety of a jury instruction. . . . The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [W]e must determine whether the jury instructions gave the jury a reasonably clear comprehension of the issues presented for their determination under the pleadings and upon the evidence and were suited to guide the jury in the determination of those issues. . . . [I]n our task of reviewing jury instructions, we view the instructions as part of the whole trial. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Moreover, [a] refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance." (Internal quotation marks omitted.) *Peatie* v. *Wal-Mart Stores, Inc.*, 112 Conn. App. 8, 23–24, 961 A.2d 1016 (2009).

The plaintiff argues that the court should have instructed the jury as follows: "Expert testimony is required only when a disputed matter is manifestly beyond the ken of the average trier of fact, be it judge or jury. . . . The issues before the court involved . . . § 38a-336a. Underinsured motorist conversion coverage, and the defendant's compliance therewith. This statute requires that [e]ach insurer licensed to write automobile liability insurance in this state shall offer, for an additional premium, underinsured motorist conversion coverage with limits in accordance with [§] 38a-336. Whether the defendant in fact complied with that requirement is a relatively straightforward inquiry that is not manifestly beyond the ken of the average trier of fact."

The plaintiff argues he was entitled to this jury instruction pursuant to *Michalski* v. *Hinz*, 100 Conn. App. 389, 404–405, 918 A.2d 964 (2007). The plaintiff's reliance on *Michalski* is misplaced. In *Michalski*, the defendant challenged on appeal the trial court's denial of his motion for a directed verdict. Id., 404. He argued on appeal that "the plaintiffs could not establish a prima facie case of negligence without the aid of expert testimony." Id. The issues before the court in *Michalski* involved boating regulations and the defendant's compliance therewith. Id. Specifically, the question was whether "our boating regulations require the sounding of a horn when two vessels are approaching in a head-on situation." Id., 404–405. This court, in response to the defendant's argument, stated that "[e]xpert testimony is required only when a disputed matter is 'manifestly beyond the ken of the average trier of fact, be it judge or jury.' " Id., 404.

In the present case, the plaintiff has failed to explain why, on the facts of this case, he is entitled to such an instruction. Additionally, the court instructed the jurors that they were the sole triers of fact and that no testimony was binding on them.[5] Absent evidence to the contrary, a jury is presumed to have followed the court's instruction. See *State* v. *Banks*, 117 Conn. App. 102, 119, 978 A.2d 519, cert. denied, 294 Conn. 905, 982 A.2d 1091 (2009). Furthermore, the plaintiff has not put forth any reason that the jury instructions given did not provide "the jury a reasonably clear comprehension of

[5] In the court's instructions to the jury regarding expert witnesses, the court stated: "[E]xpert witnesses are allowed to give their opinions. Ordinarily, a witness cannot give an opinion about saying anything but, rather, is limited to testimony as to the facts in that witness' personal knowledge. The experts in this case have given opinions. However, the fact that these witnesses may qualify as experts does not mean that you have to accept their opinions. You can accept their opinions or reject them. . . . You may believe all, some or none of the testimony of an expert witness. In other words, an expert's testimony is subject to your review like that of any other witness."

the issues presented for their determination under the pleadings and upon the evidence and were suited to guide the jury in the determination of those issues." (Internal quotation marks omitted.) *Peatie* v. *Wal-Mart Stores, Inc.*, supra, 112 Conn. App. 23. Accordingly, we conclude that the court did not abuse its discretion when it declined to give the plaintiff's requested charge.

## II

The plaintiff next claims that the court improperly granted the defendant's motion to preclude the testimony of his expert witness. Specifically, the plaintiff contends that the court improperly concluded that a licensed insurance agent who was not employed full-time as an insurance agent in Connecticut at the time the plaintiff applied for insurance was per se unqualified to give an opinion as to the standard of care applicable to licensed insurance agents in Connecticut at that time.[6] We disagree.

The following additional facts are relevant to our resolution of the plaintiff's claim. Prior to trial, the plaintiff disclosed to the defendant a proposed expert witness, Kim Fiertz, who would testify as to how personal lines automobile insurance should be sold in Connecticut and how to document the selling of such

---

[6] The plaintiff also claims that this court should adopt a national standard of care in evaluating the qualifications of an insurance agent. The plaintiff raises this claim for the first time in his reply brief in response to the defendant's characterization of his arguments in his original brief. "It is well established . . . that [c]laims . . . are unreviewable when raised for the first time in a reply brief. . . . Our practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Internal quotation marks omitted.) *SS-II* v. *Bridge Street Associates*, 293 Conn. 287, 302, 977 A.2d 189 (2009). Accordingly, we decline to review this claim.

insurance. Specifically, Fiertz was expected to testify that an agent should use a checklist when completing an application for automobile insurance and that the checklist should include whether the applicant had an opportunity to consider applying for certain coverage.[7] By motion in limine, the defendant sought to preclude Fiertz from testifying on the ground that she was not qualified as an expert. Specifically, the defendant claimed, and the court found, that Fiertz did not know the standard of care applicable to licensed insurance agents in Connecticut in 1998.

During the hearing on the motion in limine, Fiertz testified that after she graduated from college, she completed the American Institute for Chartered Property Casualty Underwriter program. In 1980, Fiertz received her New York license to sell insurance. In 1990, Fiertz got a license to sell insurance in Connecticut as a non-resident. In 2001, Fiertz moved to Connecticut and converted her license to a resident license. She continued to work for an insurance agency based in New York. All the New York agencies Fiertz worked with used checklists to review client coverages. Fiertz admitted she had no knowledge as to how any Connecticut insurance agency might have dealt with this issue.[8] Fiertz

[7] The court gave Fiertz the opportunity to examine the insurance application, and Fiertz testified that if she had been writing this insurance application, she would have had a checklist that included all of the coverages being offered. Specifically, Fiertz faulted the defendant because "there [was] no indication on this application whether they saw or discussed uninsured motorist coverage or not." The application did not indicate whether the plaintiff was offered and refused underinsured motorist conversion coverage.

[8] The court specifically asked Fiertz whether she could testify as to the proper procedures in an agency in Connecticut when interviewing or reviewing a client's automobile insurance needs. Fiertz responded: "I did run a New York City agency, and we had many Connecticut clients, and the procedures that we followed were really national procedures, sort of dictated by consultants, as well as by our—carriers and by course work that I had taken. So, I can clearly describe the proper procedures."

also testified that in New York, insurance agents routinely, on at least an annual basis, review coverages with the client and recommend upgrades. Fiertz admitted that she had no personal knowledge of the annual review standard being followed by any independent insurance agents in Connecticut.

From 1995 to 1997, Fiertz participated in insurance continuing education programs in New York. She testified that she was familiar with "idiosyncrasies" in Connecticut because of the continuing education courses.[9] New York and Connecticut have reciprocity with respect to continuing education. Fiertz did not know whether Connecticut required continuing education before 2001. She further could not indicate whether the classes she took in New York specifically dealt with selling automobile insurance in Connecticut or dealt with Connecticut law.

"The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The court's decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law. . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful

---

[9] Specifically, in response to a question of how Fiertz gained her knowledge about the practices for selling insurance in Connecticut, she testified: "Common insurance practices are common in every state, so by taking continuing education, by going to seminars, by taking [classes with the American Institute for Chartered Property Casualty Underwriters], I acquired the knowledge of the proper procedure for selling insurance and that's applicable not just to New York, New Jersey, Connecticut, California, Florida, wherever else I had sold insurance over my career."

to the court or jury in considering the issues. . . . It is well settled that [t]he true test of the admissibility of [expert] testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue. . . . Implicit in this standard is the requirement . . . that the expert's knowledge or experience must be directly applicable to the matter specifically in issue." (Citations omitted; internal quotation marks omitted.) *State* v. *Banks*, supra, 117 Conn. App. 115–16; see also Conn. Code Evid. § 7-2.[10]

The plaintiff contends that the court improperly concluded that a licensed insurance agent who was not employed full-time as an insurance agent in Connecticut at the time the plaintiff applied for insurance was per se unqualified to give an opinion as to the standard of care applicable to licensed insurance agents in Connecticut at that time.[11] The plaintiff's argument is based on

[10] Section 7-2 of the Connecticut Code of Evidence provides: "A witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue."

[11] We note that the plaintiff's reliance on *Grondin* v. *Curi*, 262 Conn. 637, 817 A.2d 61 (2003), for this proposition is misplaced. In *Grondin*, the issue before the court was "whether the trial court properly concluded that an expert witness, testifying about the applicable standard of care in a medical malpractice action, must be board certified at the time of the alleged malpractice in order to qualify as a 'similar health care provider' under General Statutes § 52-184c (c) and (d)." Id., 638. The court reasoned that the statute does not require board certified experts to have gained their knowledge by any particular method, such as from practice or experience, nor at any particular time. Furthermore, the court stated that "the fundamental requirement [is] that an expert testifying about the standard of care must know what that standard of care is in a particular situation. . . . Medical expert witnesses have long been permitted to acquire their knowledge of the appli-

the court's statement: "Fiertz, who I do think could qualify as an expert, but not as an expert of what happened in the state of Connecticut in this particular field in 1998 . . . ."[12] The record supports the court's finding that Fiertz was precluded from testifying because she in fact did not know the applicable standard of care of insurance agents in Connecticut during the relevant time frame.[13] We agree with the plaintiff that an expert's

cable standard of care via study as well as by experience." (Citation omitted.) Id., 656. The court concluded that "§ 52-184c (d) does not, as a matter of law, preclude a board certified physician, otherwise knowledgeable as to the applicable standard of care, from testifying as an expert similar health care provider, solely because the physician was not board certified at the time of the alleged malpractice." (Internal quotation marks omitted.) Id., 657. Insurance is a highly regulated industry by state, so the standard of care varies from state to state. On the contrary, medical care has moved from a statewide standard of care to a national standard of care, free of geographic limitations. Id., 652 n.16.

[12] The court further stated: "But the standard of care, I guess, has to be that ordinarily possessed and exercised by the professional insurance agents in Connecticut in like circumstances during the relevant time frame, and that maybe after she became a full-time broker, resident broker here, but even—maybe even that—maybe from then on, but certainly not in 1998 as a nonresident broker who did not know the standards of skill, care and diligence ordinarily possessed and exercised by professional insurance agents in Connecticut."

[13] The following colloquy occurred between the court, counsel and Fiertz:

"[The Defendant's Counsel]: But basically, if you're going to let her contaminate this jury with her beliefs as to what the standards should be rather than what they are in Connecticut, I'm afraid this may turn out to be a misadventure. I'm suggesti[ng] to Your Honor and I'm asking Your Honor to consider the fact, she has admitted she has no knowledge to what's in fact done. . . .

"She has knowledge of what has been taught in courses, but she doesn't have knowledge of what's actually done. It's a difference between what is taught and what is practiced, and therein lies the difference and the standards that our Connecticut court system have established are the standards of skill, care and diligence ordinarily possessed and ordinarily exercised by like professionals and like circumstances.

"Now, she knows what she has been told in courses—this is the way it should be. What it should be and what is actually being done are not necessarily the same, and to allow her to testify in front of this jury, I think, would contaminate the whole decision-making process here, and I ask Your Honor to reflect on that, and—not to allow her to testify because I think it can contaminate. We know that national standards do not apply in the insurance industry. . . .

"knowledge may be drawn from reading alone, from experience alone, or from both." (Internal quotation marks omitted.) *State* v. *Genotti*, 220 Conn. 796, 806, 601 A.2d 1013 (1992). The plaintiff has failed to show, however, that Fiertz acquired sufficient knowledge, either from reading, experience or course work, of the applicable standard of care in Connecticut in 1998. The

"The Court: [Plaintiff's counsel], how do you get around this. You heard it all. . . .

"[The Plaintiff's Counsel]: Well, Your Honor, first off, it's bald misstatement about lacking knowledge. She has—that knowledge is based upon a recognized source through continuing education. That continuing education is required—

"The Court: No, that started in 2001, so don't bring up that.

"[The Plaintiff's Counsel]: Well—well, Your Honor, she had continuing education in—in New York, also.

"The Court: That has nothing to do with Connecticut.

"[The Plaintiff's Counsel]: Well, she testified just the opposite, Your Honor, She testified that—that it did have a great deal to do with Connecticut. She did testify that, and—

"The Court: Yes, what's that, ma'am? What is he talking about? You had continuing education in New York?

"[The Witness]: I—I had continuing education in New York to maintain my New York license.

"The Court: Right.

"[The Witness]: And those courses were attended by—by—

"The Court: Well, I don't care about that. No. I'm just saying what—what's that [to] do with Connecticut?

"[The Witness]: What did it have—I think—

"The Court: You don't know.

"[The Witness]: I'm—I'm not sure.

"The Court: All right. Thank you.

"[The Witness]: I'm not exact—

"The Court: Thank you.

"[The Plaintiff's Counsel]: Well, didn't you, in those continuing educations back in the 90s in New York have subject matter that dealt with selling automobile insurance in Connecticut?

"The Court: She never testified to that.

"[The Witness]: It—I—I don't know. I don't recall.

"[The Plaintiff's Counsel]: Dealing with Connecticut law?

"[The Witness]: I don't—that I don't recall—

"[The Plaintiff's Counsel]: Okay.

"[The Witness]:—specifically, no.

"[The Plaintiff's Counsel]: Okay.

"The Court: All right. So, I guess I'm not going to be able to let her testify. . . . I don't see how I can allow it, counsel."

record is clear that the court did not abuse its discretion in making this finding. Accordingly, we conclude that the court did not abuse its discretion in precluding the proposed expert testimony.

The judgment is affirmed.

In this opinion the other judges concurred.