[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, West Hartford board of education, appeals from a final decision of the defendant, state board of education ("the state board"), determining that Jose and Kyriaki Coelho's two minor child were resident of the town of West Hartford during the 2000-200 1 academic school year. The plaintiffs appeal is authorized by General Statutes §§ 10-187 and4-183 of the Uniform Administrative Procedure Act ("UAPA").
The record contains the following relevant facts to this appeal. In September of 2000, the West Hartford registrar of students received an anonymous tip that the Coelho children were attending public school in town of West Hartford while residents of the city of Hartford. After investigation, the registrar of students notified the Coelhos by letter dated January 30, 2001 that their children were to official withdraw from the West Hartford school system effective February 6, 2001 because they were not residents of that town. (Return of Record ("ROR"), Volume I, Exhibit A.) Pursuant to General Statutes § 10-186 (b)(1), the Coelhos requested a hearing before the West Hartford board of education regarding this matter and a hearing was held on February 13, 2001. (ROR, Volume I, Exhibit O.)[1] The hearing officer, on March 20, 2001, determined that the Coelho children were not residents of West Hartford and therefore not entitled to school accommodation in that district. (ROR, Volume II, Item G, p. 2.)
Pursuant to General Statutes § 10-186 (b)(2), the Coelhos appealed to the state board of education, who established an impartial hearing board to determine the "actual residency" of the Coelho children. After a hearing, the hearing board concluded that the children were residents of the town of West Hartford during the 2000-2001 school year. The hearing board found that: "What existed here was a mother and father living apart from each other with the children being placed primarily with one of them. The intent of the parents for these 11 12 year [olds] was that they live at . . . West Hartford, while still trying to maintain a sense of normalcy in the children's relationship with both parents." (ROR, Volume II, Item G, p. 5.)
In reaching this conclusion, the hearing board relied on the following definition of "residency" to give meaning to the term as used in General Statutes § 10-186: CT Page 7908
 Our Supreme Court has decreed that `many factors' must be considered to determine residency. Intent, frequency of contact, location of personal belongings and frequency with which individuals spend at the location are among those factors. Remington. Admx. v. Aetna Cas. Surety, 240 Conn. 309 (1997).
An analysis of this case is fact-driven.
(ROR, Volume II, Item G, p. 4.)
On August 14, 2001, the plaintiff timely filed an appeal from the decision of the hearing board to this court.[2] In the present case, the plaintiff challenges the hearing board's factual findings and legal conclusions. The plaintiff also challenges the legal standard used by the hearing board in determining the Coelho children's residency. As the court concludes that the plaintiff is correct on this last issue, it is unnecessary to address any of the other issues raised.
The hearing board, in relying on Remington, stated the general holdings of our appellate courts regarding the meaning of word "residency." The term "actual residence" used in General Statutes § 10-186 (b)(2), however, is narrower in meaning than the term "residency." As the court indicated in Baerst v. Connecticut State Board of Education, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 508806 (February 10, 1993, Hodgson, J.), rev'd, 34 Conn. App. 567, cert. denied, 230 Conn. 915 (1994):
 Where the consequence of determining residence is not merely an accommodation of the wishes of a citizen, but the imposition of duties and expenses on a school district, the hearing officer was warranted in reaching a conclusion that comports with the general statutory scheme for allocating responsibility for education under Connecticut law. That scheme is based on geography, not affinities. . . .
 The appellant erroneously . . . [argues for] an approach relying not on geography but intent.
In Board of Education v. State Board of Education, Superior Court, judicial district of New Haven at New Haven, Docket No. 364754 (October 10, 1995, Maloney, J.), the court noted that the trial court's decision in Baerst was overturned on appeal because the Appellate Court concluded that the strict "geography" test did not apply in determining residency CT Page 7909 in the boundary-line cases.[3] In the usual context, where there are residences in separate towns, the intent or the social interests of the parents is irrelevant in deciding where the children "actually reside." As Judge Maloney stated: "[T]he Appellate Court [in Baerst] did not restructure the entire public education system in this state."
Cases from other jurisdictions emphasize that an "actual resident" means "physically present and living [at a location] as a householder during significant parts of each day and for important purposes consistent with residence. There [is] . . . nothing temporary or accidental about such residence. His roots there [are] deep, permanent, present and substantial." Board of Education of City School District ofOakwood v. Dille, 165 N.E.2d 807, 811 (Ohio App. 2 Dist. 1959). Where the General Assembly has used the term "actual residency," individuals "who merely take up temporary residency in a school district, such as in this case, do not intend to remain there permanently. Consequently, they do not have a stake in supporting the local school district and do not pay the local . . . tax that would normally be paid where they are domiciled. . . . [P]arents would be free to rent a room in that district and sporadically reside there, yet not contribute financially and fully to that school system. Moreover, and as important, it would disrupt the system the General Assembly has, for better or for worse, established for determining which district is responsible for educating which children."Thane v. Cumberland Valley School District, 724 A.2d 978, 983 (PA Cmwlth. Ct. 1999) (Pellegrini, J., dissenting), aff'd, 744 A.2d 1272 (PA 2000). As early as 1912, a New York case relied on the location of the family farm, and not the wishes of the parents, in determining which school district the children were to attend. Board of Education v.Crill, 149 App.Div. 407 (N.Y.A.D. 4 Dept. 1912).
The court thus finds that the hearing board used the incorrect legal standard in determining whether the Coelho children were actual residents of West Hartford, requiring the reversal of the hearing board's decision. General Statutes § 4-183 (j)(4); Board of Education v.Freedom of Information Commission, 217 Conn. 153, 159 (1991) ("Under the UAPA, a trial court may reverse the decision of an administrative agency if that decision evinces an `error of law.'. . . The trial court need not defer to an incorrect decision of law by the agency. . . .") (Citations omitted); Board of Pardons v. Freedom of Information Commission,19 Conn. App. 539, 547, cert. denied, 212 Conn. 819 (1989) ("The trial court's reversal of the FOIC decision, as based on `an unsound proposition of law,' was authorized by § 4-183 ([j]) (4). Accordingly, we conclude that the trial court did not exceed the scope of its judicial review.").
The court therefore sustains the appeal and remands it to the hearing CT Page 7910 board for a new decision based upon the standard set forth in this opinion and the facts of record. Dufraine v. Commission on Human Rights Opportunities, 236 Conn. 250, 265 (1996) ("`when a trial court concludes that an administrative agency has made invalid or insufficient findings, the court must remand the case to the agency for further proceedings if the evidence does not support only one conclusion as a matter of law.'")
 ___________________ Henry S. Cohn, Judge