CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY
*v.* JOHN A. SAKON ET AL.
(AC 32109)

DiPentima, C. J., and Bishop and Dupont, Js.

Argued September 8—officially released December 6, 2011

*John A. Sakon,* pro se, the appellant (named defendant).

*Laura E. Waltman,* with whom were *Frank H. Santoro* and, on the brief, *Sean T. King,* for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. The defendant John A. Sakon[1] appeals from the summary judgment rendered by the trial court in favor of the plaintiff, Cambridge Mutual Fire Insurance Company. On appeal, the defendant argues that the court erroneously determined that the plaintiff owed no duty to defend or to indemnify the defendant by concluding that (1) the business exclusion of the homeowner's insurance policy issued by the plaintiff applied and (2) the plaintiff was not estopped

---

[1] The plaintiff also named the following persons as defendants in its complaint: (1) Expressway Associates, IV., C/O John Sakon, (2) Manager, Pearl, Individually, (3) Manager, Pearl, Executrix, (4) Manager, Thomas Jr., (5) Manager, Edward, (6) Manager, Joyce, (7) Manager, Jean, and (8) Manager, Sandra. The only named defendant who filed an appeal was John Sakon; accordingly, we refer to John Sakon as the defendant.

from asserting the business exclusion.[2] We affirm the judgment of the trial court.

The record reveals the following facts. Between February 1, 2004, and February 1, 2005, the defendant was a named insured on a homeowner's insurance policy issued by the plaintiff, covering his residence in Avon, Connecticut. In December, 2004, the defendant filed an amended complaint against Joyce A. Manager and others, alleging that they breached a prior settlement agreement by speaking at public hearings in opposition to the defendant's proposed development of property in Glastonbury, Connecticut. See *Sakon* v. *Manager*, Superior Court, judicial district of Hartford, Docket No. CV-04-4004816 (May 16, 2007). In February, 2007, Manager filed a five count counterclaim, alleging abuse of process, unintentional infliction of emotional distress, intentional infliction of emotional distress and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

In January, 2008, the plaintiff initiated this declaratory judgment action, seeking a determination of whether it owed the defendant a duty to defend or to indemnify him against Manager's counterclaim. In October, 2008, the plaintiff filed a motion for summary

---

[2] The defendant also argues that the court failed to review the allegations in the counterclaim filed by Joyce A. Manager after the defendant filed an amended complaint in December, 2004. We decline to consider this argument because it is inadequately briefed. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Baranowski* v. *Safeco Ins. Co. of America*, 119 Conn. App. 85, 89 n.4, 986 A.2d 334 (2010). Further, the defendant argues that the court improperly shifted the burden of proof to the defendant. We will respond to this argument through our analysis of whether the court improperly rendered summary judgment in favor of the plaintiff. In addition, the defendant argues that the court improperly failed to address whether the property at issue was an insured location under the policy. Because our conclusion that the business exclusion applies to all insured properties of the defendant is dispositive, we need not review this claim.

judgment on the ground that the business exclusion in the insurance policy precluded coverage of the counterclaim. In the plaintiff's motion for summary judgment, it argued that the underlying litigation between Manager and the defendant arose out of the defendant's business activities and, therefore, fell under the business exclusion of the insurance policy. The plaintiff appended copies of the following supporting documents to its complaint: (1) the underlying complaint in the lawsuit between Manager and the defendant, (2) the parties' signed settlement agreement, (3) Manager's answers, special defenses and counterclaim, and (4) the homeowner's and umbrella insurance policies issued by the plaintiff to the defendant. The defendant filed an objection, memorandum of law and affidavit in opposition to the plaintiff's motion for summary judgment. The court rendered summary judgment in favor of the plaintiff on November 12, 2009. Thereafter, the defendant filed a motion to reargue or reconsider, which was denied on February 9, 2010. This appeal followed.

Before addressing the plaintiff's arguments, we set forth the applicable standard of review. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 251–52, 819 A.2d 773 (2003). In this case, the court rendered judgment for the plaintiff as a matter of law; therefore, our review is plenary.

"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 550, 791 A.2d 489 (2002). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *United Services Automobile Assn.* v. *Marburg*, 46 Conn. App. 99, 110, 698 A.2d 914 (1997). With these principles in mind, we address each of the defendant's claims in turn.

I

The defendant first claims that the court improperly concluded that the allegations in Manager's counterclaim triggered the business exclusion of the insurance policy, thereby eliminating the plaintiff's duty to defend or to indemnify him. We disagree.

We first set forth the applicable legal principles governing an insurer's duty to defend or to indemnify its

insured. The duty to defend "does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . *It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint.* . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend." (Emphasis added; internal quotation marks omitted.) *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 274 Conn. 457, 463, 876 A.2d 1139 (2005). "Because the duty to defend is significantly broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify . . . ." (Internal quotation marks omitted.) *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 688, 846 A.2d 849 (2004).

Our analysis of whether the plaintiff owed a duty to defend or to indemnify the defendant begins with an examination of the language of the policies, and the allegations of the counterclaim. In examining the language of the policies, our standard of review is well settled. "[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Internal quotation marks omitted.) *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 5, 942 A.2d 334 (2008). The "rule of construction favorable to the insured extends to exclusion clauses." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 796, 967 A.2d 1 (2009). In Connecticut, the court "must conclude that the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim." (Internal quotation marks omitted.) Id. Here,

the homeowner's insurance policy excludes personal liability coverage for matters "[a]rising out of or in connection with a business engaged in by an insured." (Internal quotation marks omitted.) The business exclusion "applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business . . . ." (Internal quotation marks omitted.) The policy also provides that "[b]usiness includes trade, profession or occupation." (Internal quotation marks omitted.) Similarly, the umbrella policy excludes from coverage "business pursuits or business property of an insured . . . ." The umbrella policy defines "business pursuits" as "any employment, trade, occupation, profession or enterprise in which an insured has any financial interest."

We now turn to the allegations in Manager's counterclaim. In the counterclaim, Manager alleged that "Expressway Associates IV is or at one time was a business organization that Sakonchick formed, using his elementary school aged child as his business partner."[3] In her third allegation, Manager stated that "Sakonchick formed Expressway Associates IV to acquire certain property located on Main Street in Glastonbury, Connecticut (hereafter 'The Property') for the purpose of building a shopping center (hereafter 'The Project')." In essence, Manager alleged that the defendant unlawfully attempted to deter her from speaking at public hearings in opposition to his commercial development plans by filing the underlying complaint.

In *Pacific Indemnity Ins. Co.* v. *Aetna Casualty & Surety Co.*, 240 Conn. 26, 688 A.2d 319 (1997), our Supreme Court defined the term "business pursuit" in

___

[3] The parties do not dispute that John Sakon, referred to as John Sakonchick in Manager's counterclaim, is the defendant.

the context of an insurance policy exclusion. Our Supreme Court concluded that the term "contemplates a continuous or regular activity engaged in by the insured for the purpose of earning a profit or a livelihood." Id., 33. The business engaged in by the insured "need not necessarily be limited to his *sole* occupation or employment . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 30–31. Part-time or supplemental income activities may constitute business pursuits. Id., 32. "The determination of whether a particular activity constitutes a business pursuit is to be made by a flexible fact-specific inquiry." Id., 33. Whether an insurer owes a duty to defend, however, is a pure question of law, which we review de novo. *Flint* v. *Universal Machine Co.*, 238 Conn. 637, 643, 679 A.2d 929 (1996). Thus, our analysis of whether the business exclusion applies follows the two part test of continuity and profit motive, as set forth by our Supreme Court in *Pacific Indemnity Ins. Co.*

First, the allegations of the counterclaim lead to the reasonable inference that the business activities of the defendant were continuous. The continuity element requires that the insured engage in a "customary engagement or a stated occupation"; (internal quotation marks omitted) *Pacific Indemnity Ins. Co.* v. *Aetna Casualty & Surety Co.*, 240 Conn. 30; and that the insured undertake the activity in question "not as an isolated instance but as a regular or continuous practice . . . ." (Internal quotation marks omitted.) Id., 33; see also *Grechika* v. *Liberty Mutual Fire Ins. Co.*, Superior Court, judicial district of Waterbury, Docket No. CV-00-159540 (July 5, 2001) (business exclusion applied where underlying complaint alleged that tortious conduct occurred while insured was acting as employee).

Here, the counterclaim repeatedly referred to "The Project," a development plan initiated by the defendant

to build a shopping center. For example, the counterclaim alleged that "[o]ne significant purpose of the lawsuit by [the defendant] and Expressway Associates IV against Joyce Manager was to punish and intimidate Joyce Manager so that she would not continue to oppose [the defendant's] undesirable development plans referred to above as 'The Project.' " Although the specific activity of bringing lawsuits may not fall within the ordinary scope of the defendant's commercial development business, that does not mean that the continuity element is not satisfied. Rather, the material inquiry is whether the counterclaim alleged that the defendant acted in furtherance of his regular and ongoing business interests by bringing the lawsuit. See *Pacific Indemnity Ins. Co.* v. *Aetna Casualty & Surety Co.*, supra, 240 Conn. 30 (defining continuity as a customary engagement or stated occupation). We may infer that the defendant's customary engagement and stated occupation is that of a commercial developer on the basis of the counterclaim's allegations regarding "The Project." For example, the counterclaim alleged that "Sakonchick and Expressway Associates IV believed that opposition to 'The Project' was funded by a competitor of the shopping center they sought to develop."

The defendant argues that a "reasonable inference from the facts is that this was a personal dispute between [the defendant] and [Manager], and that dispute had nothing to do with a business." The court determined, however, that no genuine issue of material fact existed as to whether the counterclaim arose from the defendant's business activities, and that the defendant did not put forth evidence to the contrary. See *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, supra, 263 Conn. 265–66 (insurer owed no duty to defend where insured's hypothetical explanation of events in complaint contained no reasonable basis). After our review of the counterclaim, we conclude that

the continuity element of the business pursuits definition is satisfied.

Second, the defendant's activities, as alleged in the counterclaim, contained a profit motive. The profit motive element requires that the activity in question be shown to be such activity as a "means of livelihood; gainful employment; means of earning a living; procuring subsistence or profit; commercial transactions or engagements." (Internal quotation marks omitted.) *Pacific Indemnity Ins. Co.* v. *Aetna Casualty Co.*, supra, 240 Conn. 30. In *Pacific Indemnity Ins. Co.*, the insureds were sued by their independent contractor for personal injuries she sustained while boarding horses on the insureds' property. Id., 27. Their insurance company refused to defend them or to provide coverage, claiming that the insureds were engaged in a "business pursuit" within the meaning of an exclusion in its policy. Id. Our Supreme Court concluded: "Although the [insureds] did not board horses as their sole means of livelihood, they nevertheless conducted the activity for the purpose of earning a profit. It is of no moment that . . . the [insureds] incurred net losses from this activity." Id., 34.

Here, Manager's counterclaim alleged that the defendant brought suit against her to impede public discourse in opposition to his commercial development plan. The counterclaim made many allegations relating to the defendant's commercial development business. For example, the counterclaim alleged that "Sakonchick and Expressway Associates IV engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of their *trade or commerce* in that . . . they attempted to extort payment from Joyce Manager for *business losses* they suffered that were not caused by Joyce Manager . . . ." (Emphasis added.) It is clear from these allegations that, even if the lawsuit against Manager was not the defendant's sole means

of protecting his commercial development plan, it was certainly one of those means.

Moreover, the policy excludes coverage for events "[a]*rising out of* or in connection with a business engaged in by an insured." (Emphasis added; internal quotation marks omitted.) The term "arising out of" indicates that a causal connection between the alleged injury and the excluded activity must exist, and that connection must not be "based . . . [upon] a reading of the complaint that is . . . conceivable but tortured and unreasonable." (Internal quotation marks omitted.) *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 374, 773 A.2d 906 (2001). The term is interpreted broadly, and "it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' " the excluded activity. *Hogle* v. *Hogle*, 167 Conn. 572, 577, 356 A.2d 172 (1975). Our review of the counterclaim leads us to conclude that the causal connection between the defendant's commercial development activities and the allegations in the counterclaim is not only conceivable, but is clearly established. The underlying civil action and the ensuing counterclaim would not have occurred in the absence of the defendant's commercial development plan. See *Arbella Mutual Ins. Co.* v. *Gloth*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-97-0569145 (April 2, 1998) (business exclusion applied where allegations of complaint were narrowly directed to insured's actions while he was engaged in real estate business). Thus, we conclude that the profit motive element of the business pursuits exclusion is satisfied.

We conclude that the court correctly determined that the plaintiff met its burden of proving that no genuine issue of material fact existed as to whether the business exclusion applied, and that the defendant failed to provide evidence of a genuine issue of material fact.

Accordingly, the court properly determined that the business exclusion applied in favor of the plaintiff.

## II

Next, the defendant claims that the court improperly concluded that the plaintiff was not estopped from asserting the business exclusion to the insurance policy.[4] Specifically, he argues that genuine issues of material fact exist as to whether the plaintiff (1) provided him with a defense without a reservation of rights and (2) otherwise waived the business exclusion. We disagree.

"We [have] recognized that estoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." (Internal quotation marks omitted.) *Boyce* v. *Allstate Ins. Co.*, 236 Conn. 375, 385, 673 A.2d 77 (1996). In addition, "[i]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Internal quotation marks omitted.) *Prudential Property & Casualty Ins. Co.* v. *Anderson*, 101 Conn. App. 438, 447, 922 A.2d 236, cert. denied, 283 Conn. 911, 928 A.2d 537 (2007).

First, the defendant argues that a genuine issue of material fact exists as to whether the plaintiff provided him with a defense against Manager's counterclaim without asserting a reservation of rights. We disagree.

---

[4] The defendant, in the conclusion to his brief, raises the issue of laches in addition to equitable estoppel. We decline to consider this argument because it is inadequately briefed. See *Baranowski* v. *Safeco Ins. Co. of America*, 119 Conn. App. 85, 89 n.4, 986 A.2d 334 (2010).

"It is generally held that if an insurer conducts an investigation or defense under a notice of reservation of rights, it will not thereby be estopped to set up any policy defenses that may be available to it." *West Haven* v. *Hartford Ins. Co.*, 221 Conn. 149, 165, 602 A.2d 988 (1992); see *Basta* v. *United States F. & G. Co.*, 107 Conn. 446, 450, 140 A. 816 (1928); compare *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, supra, 274 Conn. 469–70 (insurer owed duty to defend where it did not make a reservation of rights). Here, the court stated that "[t]he plaintiff attached four documents to support its assertion that the plaintiff and the defendant timely reserved their respective rights regarding whether the defendant was entitled to defense and/or indemnity under the homeowner policy, including an affidavit that denied that the plaintiff defended the defendant in the previous lawsuit." The court concluded that "[t]he plaintiff's documents clearly establish that the defendant's expectation of the plaintiff's obligation to defend and/or indemnify him in the counterclaim against him was unreasonable."[5] At trial, the defendant's counsel stated, "the claim has actually been actively defended for more than a year, Your Honor. . . . They've done it under a reservation of rights." "The knowledge and admissions of an attorney are imputed to his client." *Lafayette Bank & Trust Co.* v. *Aetna Casualty & Surety Co.*, 177 Conn. 137, 140, 411 A.2d 937 (1979). Thus, the record supports the court's

---

[5] The defendant argues that the court improperly applied the "sophisticated businessman" standard, rather than the "reasonable layman" standard, to his claim of estoppel. The court stated that "the defendant is a sophisticated business person . . . and he would be expected to understand that his homeowner's insurance policy clearly enunciates the business activities exclusion." The court made this statement in passing, however, and did not rely on it in determining that the business exclusion applied. Thus, we conclude that the court complied with the "basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters . . . ." *Cody* v. *Remington Electric Shavers*, 179 Conn. 494, 497, 427 A.2d 810 (1980).

conclusion that no genuine issue of material fact exists as to whether the plaintiff asserted a reservation of rights.

The defendant next argues that, because the plaintiff represented him in a previous lawsuit, a genuine issue of material fact exists as to whether the plaintiff could assert the business exclusion.[6] We are not persuaded. Even where an insurer defends pursuant to a valid reservation of rights, "[i]f, however, the insurer conducts itself in a manner inconsistent with the reservation of rights or makes assurances to the insured that the claim will be taken care of, the reservation of rights may be waived." *West Haven* v. *Hartford Ins. Co.*, supra, 221 Conn. 165. "Waiver is the intentional relinquishment of a known right. . . . To constitute waiver, there must be both *knowledge* of the existence of the right and *intention* to relinquish it." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 561–62, 316 A.2d 394 (1972).

"In the insurance context . . . it has been recognized that a contract, under the guise of waiver, [may not] be reformed to create a liability for a condition specifically excluded by the specific terms of the policy. . . . This limitation on the applicability of waiver to an insurance contract recognizes that because waiver requires the relinquishment of a known, and therefore existing, right within the insurance contract, a party cannot create through waiver coverage for a claim that

---

[6] The defendant, in his brief, incorporates by reference the arguments set forth in his memorandum of law in opposition to the plaintiff's motion for summary judgment. The defendant, however, provides no analysis in support of his claim that the court improperly rejected these arguments. See *Baranowski* v. *Safeco Ins. Co. of America*, 119 Conn. App. 85, 89 n.4, 986 A.2d 334 (2010). Accordingly, we conclude that these arguments are inadequately briefed. See, e.g., *Lin* v. *National Railroad Passenger Corp.*, 277 Conn. 1, 15–16 n.9, 889 A.2d 798 (2006).

the parties expressly had excluded from that contract." (Citation omitted; internal quotation marks omitted.) *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 777, 653 A.2d 122 (1995). Nevertheless, an insurer may still waive the assertion that it owes no duty to defend its insured by engaging in conduct inconsistent with a valid reservation of rights. See *West Haven* v. *Hartford Ins. Co.*, supra, 221 Conn. 165.

Here, the court stated that "[t]he defendant has offered no evidence or documents to show that [the] plaintiff did or said anything to induce him to believe that in the lawsuit underlying this action that the business exclusion would not apply." The defendant argues that the plaintiff should be estopped from asserting the business exclusion because it provided him with a defense in an earlier lawsuit. The court concluded that this argument was without merit because the prior lawsuit referred to by the defendant was entirely unrelated to the underlying civil action. Assuming that the plaintiff did in fact provide the defendant with a defense in the prior lawsuit, he has not put forth any evidence that this defense was intended to induce him to believe that he would be defended in the underlying counterclaim. The defendant also has not put forth any evidence that the plaintiff's conduct caused him any prejudice in the underlying litigation. "[T]here must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury . . . ." (Citation omitted; internal quotation marks omitted.) *Brzezinek* v. *Covenant Ins. Co.*, 74 Conn. App. 1, 8, 810 A.2d 306 (2002), cert. denied, 262 Conn. 946, 815 A.2d 674 (2003); see also *Heyse* v. *Case*, 114 Conn. App. 640, 655, 971 A.2d 699 (implied covenant of good faith and fair dealing did not require insurer to waive policy exclusions, even if insurer were found to have exercised a contrary

option with respect to another policyholder with comparable insurance policy), cert. denied, 293 Conn. 905, 976 A.2d 705 (2009).

The record supports the court's determination that the defendant did not meet his burden of proving that a genuine issue of material fact existed with respect to his claim of equitable estoppel. Thus, the court properly concluded that the plaintiff was not estopped from asserting the business exclusion.

The judgment is affirmed.

In this opinion the other judges concurred.