ENRICO MANGIAFICO ET AL. *v.* STATE BOARD
OF EDUCATION
(AC 33121)

Gruendel, Espinosa and Borden, Js.

Argued February 2—officially released October 23, 2012

*Enrico Mangiafico*, pro se, the appellant (named plaintiff).

*Jane D. Comerford*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee (named defendant).

*Peter J. Murphy*, for the appellee (defendant board of education of the town of Farmington).

*Opinion*

ESPINOSA, J. The self-represented plaintiff, Enrico Mangiafico,[1] appeals from the judgment of the Superior

---

[1] The plaintiff's wife, Concettina Mangiafico, also was a plaintiff in the appeal to the Superior Court but has not appealed to this court from the Superior Court's judgment. We therefore refer in this opinion to Enrico Mangiafico as the plaintiff.

Court dismissing his appeal from the determination of an impartial hearing board, appointed by the defendant, the state board of education,[2] that his children were not residents of Farmington and, therefore, were not entitled to free school accommodations in Farmington. The plaintiff claims that the court's dismissal of his appeal was improper because the impartial hearing board incorrectly determined that (1) his children were not residents of Farmington at the time of the hearing; (2) there was no exception to the residency requirement for displacement due to natural disaster; (3) the defendant was not estopped from claiming on the basis of residency that his children were not entitled to free school accommodations; and (4) certain evidence, which the plaintiff obtained through Freedom of Information Act[3] requests, should not be admitted into evidence.[4] We affirm the judgment of the Superior Court.

---

[2] The board of education of the town of Farmington (school board) was the named defendant before the impartial hearing board. The school board filed a motion to intervene as a party defendant in the plaintiff's appeal to the Superior Court, which the court granted. The school board, however, did not file a brief in this appeal. Therefore, we refer to the state board of education as the defendant.

[3] See General Statutes § 1-200 et seq.

[4] Additionally, in his statement of issues, the plaintiff claims that the court improperly failed to remand the case to the impartial hearing board for consideration of further evidence related to the issue of when the plaintiff and his family returned to Farmington. He does not, however, analyze this claim within his main brief to this court. "While [w]e are aware that [i]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party . . . we are also aware that [a]lthough we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Worth* v. *Korta*, 132 Conn. App. 154, 157, 31 A.3d 804 (2011), cert. denied, 304 Conn. 905, 38 A.3d 1201 (2012). "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Cambridge Mutual Fire Ins. Co.* v. *Sakon*, 132 Conn. App. 370, 372 n.2, 31 A.3d 849 (2011), cert. denied, 304 Conn. 904, 38 A.3d 1202 (2012). The only analysis of this claim is within the plaintiff's reply brief to this court. "[C]laims . . . are unreviewable when raised for the first time in a reply brief. . . .

The following facts as found by the impartial hearing board are relevant to our consideration of this appeal. In December, 2005, the plaintiff purchased a residence in Farmington (Farmington property), and he, along with his wife and children, began occupying the Farmington property in February, 2006. The plaintiff's family maintained significant contacts with Farmington and acted in a manner consistent with an intent to remain Farmington residents. They received mail at the Farmington property, paid taxes on the property and listed the property's address on their motor vehicle registrations. The plaintiff worked in Farmington and the family attended church there.

In April, 2006, additional construction commenced on the Farmington property, and the plaintiff and his family moved back to property that the plaintiff owned in New Britain (New Britain property), where they had been residing continuously since at least 1996 until February, 2006. The plaintiff intended to lease this property beginning in July, 2006, and had executed a written lease with a prospective tenant. The plaintiff intended to move back to the Farmington property upon the completion of the construction.

In June, 2006, heavy rain caused structural damage to the Farmington property, rendering it uninhabitable. The plaintiff attempted to obtain insurance proceeds to complete necessary repairs to the property, but the insurance company refused to distribute such proceeds. Because his family could not return to the Farmington property, the plaintiff cancelled the lease with the prospective tenant for the New Britain property, and he

One rationale for that maxim is the fact that [a]rguments first presented in a reply brief impair the opposing party's opportunity to reply in writing." (Citation omitted; internal quotation marks omitted.) *McDonough* v. *Forrest*, 129 Conn. App. 851, 856 n.3, 21 A.3d 546, cert. denied, 302 Conn. 924, 28 A.3d 340 (2011). Accordingly, we decline to review this claim.

and his family continued to reside at the New Britain property.

In September, 2007, the plaintiff's children began attending school in Farmington. After receiving a complaint that the children were not residing in Farmington, the school board conducted an investigation. Through the investigation, the school board learned that the children were residing in New Britain. On January 8, 2009, the school board notified the plaintiff that his children were not residents of Farmington and, therefore, would not be permitted to attend school in Farmington after January 9, 2009.

At the plaintiff's request, the school board held a hearing on this matter on February 24, 2009. At the time of the hearing, the plaintiff was pursuing litigation against his insurance company over its refusal to distribute insurance proceeds, and the Farmington property remained uninhabitable. The Farmington property was placed on the blighted building list on January 14, 2009, and it was still on this list at the time of the hearing. Although the plaintiff intended to return to the property, at the time of the hearing it was not known when that would occur.

On March 3, 2009, the school board issued its decision that, under its policies, the plaintiff's children were not residents of Farmington and were not entitled to free school accommodations. On March 19, 2009, the plaintiff filed a timely appeal of this decision with the defendant. The impartial hearing board (hearing board), established by the defendant,[5] held a hearing on May

[5] General Statutes § 10-186 (b) (2) provides in relevant part: "The State Board of Education shall, on receipt of a written request for a hearing made in accordance with the provisions of this subsection, establish an impartial hearing board of one or more persons to hold a public hearing in the local or regional school district in which the cause of the complaint arises. . . . The hearing board may render a determination of actual residence of any child, emancipated minor or pupil eighteen years of age or older where residency is at issue."

18, 2009, and issued its decision on May 29, 2009. The hearing board determined that the children were not residents of Farmington because they were not actually residing in the district. Rather, the hearing board determined that the children were residents of New Britain. Therefore, the hearing board held that they were not entitled to free school accommodations in Farmington.

On July 20, 2009, the plaintiff appealed from the determination of the hearing board to the Superior Court. Preliminarily, the court noted that the plaintiff was not disputing the facts found by the hearing board; rather, the plaintiff was attempting to distinguish the facts in the present case from those in decisions of the defendant on which the hearing board had relied. Reviewing the hearing board's findings under the substantial evidence rule, the court determined that the hearing board properly had considered the facts in the record, including evidence supporting a finding that the plaintiff and his family had ties to Farmington. The court agreed with the hearing board that an intent to return to the district, upon which the plaintiff relied, was not a proper basis for a finding of residency and that an indefinite absence of the plaintiff's family from Farmington defeated the plaintiff's claim that he and his family were residents of Farmington. Accordingly, the court dismissed the plaintiff's appeal. This appeal followed. Additional facts will be set forth as necessary.

"In accordance with the Uniform Administrative Procedure Act, General Statutes §§ 4-166 through 4-189, we review an administrative agency's decision for abuse of discretion to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, 300 Conn. 617, 621–22, 15 A.3d 1063 (2011). "With regard to questions of

fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal quotation marks omitted.) *Lash* v. *Freedom of Information Commission*, 300 Conn. 511, 517, 14 A.3d 998 (2011).

"Under this standard, the [c]onclusions reached by [the agency] must be upheld by the [reviewing] court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [agency]. . . . The question is not whether the [reviewing] court would have reached the same conclusion . . . but whether the record before the [agency] supports the decision reached. . . . If a [reviewing] court finds that there is substantial evidence to support [an agency's] findings, it cannot substitute its judgment for that of the [agency]. . . . If there is conflicting evidence in support of the [agency's] stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the [agency]. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Internal quotation marks omitted.) *Rapoport* v. *Zoning Board of Appeals*, 301 Conn. 22, 32–33, 19 A.3d 622 (2011).

Although our review of agency determinations generally is deferential, "we do not defer to the [agency's] construction of a statute—a question of law—when . . . the [provisions] at issue previously ha[v]e not been subjected to judicial scrutiny or when the [agency's] interpretation has not been time tested." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 599, 996 A.2d

729 (2010). When a case "presents a question of law and does not involve an agency's time-tested interpretation of its regulations . . . the standard of review is [plenary]." *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, supra, 300 Conn. 622.

I

First, the plaintiff claims that the hearing board improperly determined that his children were not residents of Farmington at the time of the hearing and were not entitled to free school accommodations. The plaintiff argues that his family's intent to return to Farmington, his family's established nexus to Farmington and the fact that he eventually did return to Farmington all support a finding of residency in Farmington. He asserts that the hearing board improperly determined that the facts of this case supported a finding that his family was indefinitely displaced as opposed to temporarily displaced. We disagree.

Under General Statutes § 10-220 (a), local boards of education must ensure that public school is available to "each child of school age residing in the district . . . ." General Statutes § 10-186 provides in relevant part: "(a) Each local or regional board of education shall furnish, by transportation or otherwise, school accommodations so that each child five years of age and over and under twenty-one years of age who is not a graduate of a high school or vocational school may attend public school . . . . Any board of education which denies school accommodations, including a denial based on an issue of residency, to any such child shall inform the parent or guardian of such child . . . of his right to request a hearing by the board of education in accordance with the provisions of subdivision (1) of subsection (b) of this section. A board of education which has denied school accommodations shall advise the board of education under whose jurisdiction

it claims such child should be attending school of the denial. . . . (b) (1) If any board of education denies such accommodations, the parent or guardian of any child who is denied schooling . . . may, in writing, request a hearing by the board of education. The board of education may . . . establish a local impartial hearing board of one or more persons not members of the board of education to conduct the hearing. . . . [I]n cases of denial of schooling based on residency, the party denied schooling shall have the burden of proving residency by a preponderance of the evidence. (2) . . . The hearing board may render a determination of actual residence of any child, emancipated minor or pupil eighteen years of age or older where residency is at issue."

The hearing board determined that, by using the term "actual residence" in § 10-186 (b) (2), the legislature expressed its intent to mean something narrower than what the term "residence" can connote in other contexts. Specifically, the hearing board determined that trial courts had ruled that § 10-186 required the student's physical presence in the district to support a finding of actual residence. On this point, the hearing board cited *Board of Education* v. *State Board of Education*, Superior Court, judicial district of New Britain, Docket No. CV-01-0510157-S (June 19, 2002) (32 Conn. L. Rptr. 309) (" 'actual resident' means 'physically present and living [at a location] as a householder during significant parts of each day and for important purposes consistent with residence' "), and *Board of Education* v. *State Board of Education*, Superior Court, judicial district of New Haven, Docket No. CV-940364754 (October 4, 1995) (15 Conn. L. Rptr. 304) ("the residence of the child for purposes of public school attendance is in the town where [the child's dwelling] is located").

Additionally, the hearing board found that the defendant's decisions consistently reflected this same approach to the residency requirement of §§ 10-186 and

10-220. In *Student* v. *Board of Education*, Case No. 98-7 (April 16, 1999), the hearing board held that, to prove actual residence, the party denied schooling had to demonstrate physical presence in the district, not just intent to reside there in the future. In *Student* v. *Regional School District #5 Board of Education*, Case No. 98-2 (June 16, 1999), the hearing board held that two students, whose family recently had sold their home in Orange, were still residents of Orange while their family temporarily stayed in East Haven and had a new house built in Orange.

The parties do not dispute the hearing board's reliance on these trial court and hearing board decisions. Rather, the parties disagree regarding the proper characterization of the *facts* of the present case. The plaintiff, without challenging the hearing board's application and interpretation of these decisions, discussed previously, asserts that the facts of this case do not support the hearing board's factual determination that the plaintiff's family did not "actually reside" in Farmington. In so arguing, the plaintiff attempts to distinguish the facts in the present case from those in the decisions relied on by the hearing board. This factual argument properly is reviewed for an abuse of discretion under the substantial evidence test. See *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, supra, 300 Conn. 621–22. Accordingly, we confine our analysis to this issue, as it is the only issue properly presented by the parties on appeal.

We conclude that the hearing board did not abuse its discretion in finding that the plaintiff's children did not actually reside in Farmington. At the time of the hearing, the plaintiff and his family still were living in New Britain, and the Farmington property was on the blighted building list. The plaintiff asserted before the hearing board that he might be able to obtain a certificate of occupancy for the Farmington property by

November, 2009, but he could not identify a particular date by which he and his family could return to the Farmington property. The hearing board did not abuse its discretion in finding that, at the time of the hearing, the plaintiff's living situation properly could be characterized as an indefinite absence from Farmington. The hearing board properly determined that such an indefinite absence is inconsistent with "actual residence" in Farmington and that, as a result, the plaintiff's children were not entitled to free school accommodations in Farmington.

II

Next, the plaintiff claims that, even if his children were not residents of Farmington for the period of time in question, the hearing board improperly determined that there was no exception to the residency requirement of §§ 10-186 and 10-220 for displacement due to natural disaster. The plaintiff argues that, if a student's displacement was due to an unforeseen catastrophe, the student should be allowed free school accommodations despite not residing in the district. Furthermore, the plaintiff argues that his children were entitled to protections under the McKinney-Vento Homeless Assistance Act (McKinney-Vento Act), 42 U.S.C. § 11301 et seq., because they were "homeless" within the meaning of that act during the period of time in question. We are not persuaded.

The following additional facts are relevant to this claim. On consideration of the plaintiff's appeal from the decision of the hearing board, the court determined that the hearing board had left unresolved certain questions that had to be addressed before the court could review its decision. Accordingly, the court remanded the case to the hearing board to consider two issues: (1) whether there was an exception to the requirement of actual presence in the school district for temporary

removal from the district and (2) assuming that such an exception existed, whether, in the present case, the plaintiff's children were displaced permanently, rather than temporarily.

On remand, the hearing board answered the first question in the negative, maintaining that there was no established exception to the requirement of actual presence in the district. The hearing board noted that, although limited temporary displacement from a district would not defeat a finding of residency, it could not find the plaintiff's children to be Farmington residents because their displacement was of an indefinite duration. The hearing board explained that it could not "find that this indefinite, rather than temporary, arrangement excuses actual presence. Doing so would also impliedly, if not expressly, excuse actual presence for purposes of entitlement to school accommodation ad infinitum. Establishing a standard of entitlement to free school accommodations for an indefinite period of time without actual presence is not supported by the law. This would lead to the same unworkable approach to determining residency that the Connecticut General Assembly specifically addressed when it enacted [Public Acts 1995, No. 95-130] as set forth in the legislative history."

Whether the residency requirement of §§ 10-186 and 10-220 contemplates an exception for displacement due to natural disaster is a question of law. Therefore, our review is plenary. See *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles,* supra, 300 Conn. 622. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." (Internal quotation marks omitted.) *Dept.*

*of Public Safety* v. *State Board of Labor Relations,* supra, 296 Conn. 599. General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

On the basis of the plain text of §§ 10-186 and 10-220, we conclude that the legislature has not provided a statutory exception from the residency requirement for displacement due to natural disaster. There is no mention of natural disaster in either statute or in related statutes. Furthermore, when the legislature has intended to create exceptions to the residency requirement in recognition of special circumstances, it has done so explicitly. For example, § 10-186 (a) resolved the problem of "border cases" in which a child's house was located on the border of two towns by providing that "a child residing in a dwelling located in more than one town in this state shall be considered a resident of each town in which the dwelling is located and may attend school in any one of such towns. . . ." General Statutes § 10-186 (a). Accordingly, we conclude that if the legislature intended to create a statutory exception for students displaced due to natural disaster, it would have done so explicitly.

Although we conclude that there is no statutorily mandated exception to the residency requirement for displacement due to natural disaster, we recognize that the defendant may, in the exercise of its discretion, make case-by-case residency determinations that take into consideration displacement due to natural disaster. The defendant has the authority to issue regulations interpreting §§ 10-186 and 10-220. See General Statutes

§ 10-3a (b) ("[the defendant] shall adopt regulations pursuant to the provisions of [the Uniform Administrative Procedure Act]"); see also General Statutes § 4-166 (13) (setting forth general power of agencies to issue regulations). Furthermore, the defendant may make residency determinations in contested cases. See General Statutes § 10-186 (b) (2) (giving any individuals denied free school accommodations right to request hearing); see also General Statutes § 4-166 (2) (defining general power of agencies to decide contested cases). It is within the discretion of the defendant to interpret "residents" as that term is used in §§ 10-186 and 10-220 to include individuals who are temporarily displaced due to natural disaster.

To the extent that the hearing board determined that the defendant, in the absence of a statutorily mandated natural disaster exception to the residency requirement, has not exercised its discretion to allow for such an exception, we conclude that the hearing board's determination is supported by substantial evidence. The hearing board was persuaded by evidence that suggested that the plaintiff did not qualify for any exception to the requirement of actual residence in the district. The hearing board noted that the defendant previously had found that temporary displacement was not inconsistent with a finding of actual residence but determined that the plaintiff's displacement could not be characterized properly as temporary. The court did not abuse its discretion in finding that there was no exception to the residency requirement that applied to the plaintiff's case.

The plaintiff's claim that his children were entitled to protections under the McKinney-Vento Act is without merit. "The term 'homeless children and youths' . . . (A) means individuals who lack a fixed, regular, and adequate nighttime residence (within the meaning of [42 U.S.C. § 11302 (a) (1)]); and (B) . . . includes . . .

(i) children and youths who are sharing the housing of other persons due to loss of housing, economic hardship, or a similar reason; are living in motels, hotels, trailer parks, or camping grounds due to the lack of alternative adequate accommodations; are living in emergency or transitional shelters; are abandoned in hospitals; or are awaiting foster care placement . . . ." 42 U.S.C. § 11434a (2). The unchallenged findings of the hearing board reflect that, at all times relevant to this appeal, the plaintiff's family was living at the New Britain property. The plaintiff was the owner of the property, but he argues that it was not "adequate" because it was a rental property. Other cases in which courts have interpreted the meaning of homelessness within the context of the federal act do not support the plaintiff's suggested interpretation of that act. See, e.g., *Lampkin* v. *District of Columbia*, 879 F. Supp. 116, 122–23 (D.D.C. 1995) (holding that families living in shelters and families on the waiting list to enter shelter were homeless for purposes of McKinney-Vento Act). We agree with the court that the plaintiff and his family were not homeless within the meaning of the federal act and, therefore, were not entitled to its protections.

III

Next, the plaintiff claims that the hearing board improperly failed to conclude that the defendant was estopped from claiming on the basis of residency that his children were not entitled to free school accommodations. The plaintiff asserts that he justifiably relied on a proof of residency form, provided by the school for enrollment purposes, that allowed the plaintiff to demonstrate his children's residency by submitting proof of his mortgage on the Farmington property. Furthermore, the plaintiff argues that, in good faith, he relied on certain assurances from the superintendent that he would not be assessed back tuition for time

that his family spent living in New Britain while the Farmington property underwent renovations.

Municipal estoppel claims are "inherently fact bound." *Collins Group, Inc.* v. *Zoning Board of Appeals*, 78 Conn. App. 561, 576, 827 A.2d 764, cert. denied, 266 Conn. 911, 832 A.2d 68 (2003). Although the plaintiff raised this estoppel claim before the trial court, our careful review of the court's decision does not reflect that it addressed the claim or made any factual determinations directly related to the claim. We decline to review the claim on the basis of an inadequate record. See, e.g., *Conservation Commission* v. *Red 11, LLC*, 119 Conn. App. 377, 385–88, 987 A.2d 398 (court declines to review claim of municipal estoppel when appellant failed to furnish Appellate Court with record that included trial court's findings related to such claim), cert. denied, 295 Conn. 924, 991 A.2d 566 (2010).

IV

Finally, the plaintiff claims that the hearing board improperly did not admit certain evidence obtained through Freedom of Information Act[6] requests. The plaintiff asserts that this evidence would have demonstrated that Farmington has treated other families differently from the way it treated his family, namely, by affording free tuition to students who had been displaced from Farmington for longer periods of time than had the plaintiff's children. This evidence, the plaintiff argues, is necessary for the proper resolution of the issues on appeal. We disagree.

The following additional facts are relevant to this claim. At the May 18, 2009 hearing, the plaintiff represented to the hearing board that he had made two separate requests under the Freedom of Information Act[7]

---

[6] See footnote 3 of this opinion.

[7] See footnote 3 of this opinion.

for materials related to previous decisions of the defendant in residency cases. In response to his first request, he had received documents related to a case heard by the defendant in which, according to the plaintiff, the family received greater leniency than was granted to his family in the present case. The plaintiff maintained that he reviewed these documents and, having decided that they would be relevant to the hearing, made a second request, which was pending at the time of the hearing, for documents relating to other residency cases heard by the defendant. Accordingly, the plaintiff requested a continuance to allow for a response to his second request. The hearing board declined to consider as a full exhibit material from the first request on the ground that it related to only a single case, which did not, on its own, demonstrate the pattern of disparate treatment alleged by the plaintiff. Additionally, the hearing board declined to grant a continuance for the second request, stating that it was mere speculation that the requested documents would support the plaintiff's argument.

We conclude that the hearing board did not abuse its discretion. It was reasonable for the hearing board to determine, on the basis of the evidence before it, that the plaintiff had failed to demonstrate that the documents received through the first Freedom of Information Act[8] request and those that the plaintiff anticipated receiving through the second request were not sufficient grounds on which to base a showing of disparate treatment by the defendant. Furthermore, there was substantial evidence in the record, in the form of previous decisions of the defendant that had been admitted, that supported the defendant's contention that its refusal to grant the plaintiff's children free school accommodations was consistent with its internal policies and its prior application of those policies.

[8] See footnote 3 of this opinion.

The judgment is affirmed.

In this opinion the other judges concurred.